John S. Barnes Corporation, Plaintiff-Appellant, v. Board of Review, Department of Labor, State of Illinois, and Walter Bernard Erickson, Defendants-Appellees.

Gen. No. 64–19.

Second District.

January 20, 1965.

Welsh, Welsh & Holmstrom, of Rockford (Keith Hyzer, of counsel), for appellant.

William G. Clark, Attorney General, of Chicago (William C. Wines, Raymond S. Sarnow and A. Zola Groves, Assistant Attorneys General, of counsel), for Board of Review Department of Labor, appellee.

MORAN, J.

This is an appeal by John S. Barnes Corporation from an order of the Circuit Court of Winnebago County entered pursuant to the provisions of the Administrative Review Act, affirming a decision of the Board of Review of the Department of Labor of the State of Illinois. The Board of Review had held that Walter Bernard Erickson was entitled to receive unemployment compensation benefits from April 29, 1962, through May 19, 1962.

The order was first appealed to the Supreme Court of Illinois. Upon that Court's own motion the cause was transferred to this Court for determination.

The record discloses that the defendant Erickson, herein referred to as claimant, is 27 years of age and resides with his wife and three-year-old child. In 1956, while working for the General Motors Company, he injured his right hand and received an award under the Wisconsin Workmen's Compensation Act. The injury left Erickson with a partially crippled right hand in that the joints of the right ring finger were stiff with the finger flexed towards the palm. After leaving General Motors in 1957, he was employed for a year as a vacuum cleaner salesman and subsequently held various industrial jobs. On January

103

13, 1961, he started to work for the appellant employer and was employed as a pump assembler at a rate of pay of $1.55 per hour. On January 15, 1962, at his request, he was granted a medical leave of absence in order to have corrective surgery performed on his hand. His former employer, General Motors Corporation, agreed to pay his medical expenses and weekly benefits. The surgery was performed and consisted of fusing each of the interphalangeal joints at approximately 40 degrees flexion. The claimant's personal physician, who performed the operation, estimated the resulting condition as approximately a fifty percent impairment to the right ring finger. This treating physician released the claimant to return to work on April 5, 1962, however, the president of the appellant corporation and the physician employed by appellant as plant doctor did not find him able to resume his duties and the treating physician agreed to extend the time for discharge to return to work to a later date.

In the latter part of April 1962, General Motors Corporation terminated the compensation payments. On April 30th, claimant went to see the president of the Barnes Corporation who indicated he felt that because of the condition of the finger claimant was not able to resume his regular duties and that the finger constituted an industrial hazard. Claimant requested permission to seek another job and was granted permission to do so. Claimant then pursued a course of job seeking and filed for unemployment compensation. Approximately one month later he was hired by a discount store as a stock man at a rate of pay of $1.25 per hour.

After claimant filed for unemployment compensation the appellant filed a notice of possible ineligibility dated May 5, 1962. The appellant contended that the claimant was still employed by the company, that

the claimant was still unable to perform the work of assembling pumps and that due to corrective surgery, the claimant was not available for work.

A Deputy of the Division of Unemployment Compensation made an investigation of the claim. He found that the claimant was eligible for unemployment compensation in that he left work voluntarily with good cause and that he was available for work.

Appellant company appealed the Deputy's determination. A hearing was held before a hearing Referee, who affirmed the Deputy's decision and the Board of Review affirmed the decision of the Referee. The decision of the Board of Review concludes as follows:

> "The claimant left his particular job in January of 1962 in order to undergo surgery and this, we hold, constitutes good cause for voluntarily leaving work. There was considerable discussion at the hearing as to whether the claimant was physically able to continue on his previous job as pump assembler and it would appear that he could no longer perform such work. Later he attempted to secure other work to support himself and his family. According to the record he finally did secure a job at a substantially lower wage and was so working at the date of the hearing. The claimant, thus, has manifested his continued attachment to the labor market and interest in working. To be sure, the claimant was physically handicapped and this without fault of the employer herein. Nevertheless, he was able to perform other work and has since then been doing so. On the basis of the evidence we find that the claimant was able to work, available for work and actively seeking work. He is, therefore, eligible for benefits."

The company filed suit in the Winnebago County Circuit Court pursuant to the Administrative Review Act. After hearing oral argument and considering written briefs, the court affirmed the decision of the Board of Review and this appeal follows.

The pertinent statutory provisions are found in Sections 601 and 500 of the Unemployment Compensation Act. Section 601A (Ill Rev Stats 1961, c 48, § 431) provides:

> "Section 601. Voluntary Leaving. A. An individual who has been paid wages within each of at least three calendar quarters of his base period for insured work shall be ineligible for benefits for the week in which he has left work voluntarily without good cause and, thereafter, until whichever of the following shall first occur: (1) He is not an 'unemployed individual' as defined in Section 239 by reason of having accepted bona fide work; or (2) six consecutive weeks have elapsed which begin on the first day of the first week with respect to which he has filed a claim."

Section 500C (Ill Rev Stats 1961, c 48, § 420) is:

> "Section 500. Eligibility for Benefits. An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that:

> "C. He is able to work, and is available for work; provided that during the period in question he was actively seeking work,"

The issues presented by this appeal are whether claimant left his employment with good cause within the meaning of the act and whether at the time of the filing of his claim for benefits he was able to work and available for work. Since he found em-

ployment within less than six weeks after the claim for compensation he cannot recover if his leaving was without good cause.

The letter from the company to the Division of Unemployment Compensation dated May 5, 1962, states that claimant "is still employed by the John S. Barnes Corporation," however, in this court the company takes the position that claimant left his employment without good cause in that the cause for his leaving was not related to his employment with the company. The Board of Review concluded that claimant left his job in January of 1962, to undergo surgery and that there was, therefore, good cause for voluntarily leaving work. Appellee contends, in the alternative, either that claimant voluntarily quit with good cause in January 1962, or that claimant's employment continued during the period of his leave of absence until severed by the employer's refusal to permit him to return to work.

The question is thus presented whether the cause for leaving must be related either to the employment or the employer in order to be good cause under the act. The statute fails to define "good cause" and no pertinent Illinois decisions are cited.

Several states have unemployment compensation statutes which bar benefits in the case of voluntarily leaving without good cause attributable to the employment or to the employer. A greater number of states, however, have statutes not containing the "attributable" clause and Illinois falls within the majority in this regard.

Appellant company cites the case of John Morrell & Co. v. Unemployment Compensation Commission, 69 SD 618, 13 NW2d 498 (1944) involving an interpretation of the South Dakota Act. The claimant there left her work because of pregnancy. At the

time the cause of action arose the South Dakota Act did not contain an "attributable" clause, however, such a provision was enacted in 1943 while the case was pending. The Court said:

> "We agree that claimant was justified in leaving her employment, but it does not follow that she was entitled to unemployment benefits. It appears to us from a consideration of the act that the legislature did not intend that employees who leave their work for reasons not attributable to or connected with their employment should receive benefit payments. Without giving the word 'voluntarily' . . . an exact definition, we think that it would do violence to the intent and purpose of the statute to hold under the facts in this case that claimant did not 'voluntarily' leave her employment. We are also of the opinion that claimant left her employment 'without good cause' within the meaning of that phrase as used in the act."

The court, in commenting on the 1943 amendment stated that the amendment did not change the existing law and that the amendment was enacted to express more clearly the legislative intent that the cause for leaving must be connected with the employment.

The South Dakota statute in force at the time of the claim provided that an unemployed individual who has left work voluntarily without good cause shall not be entitled to any benefit. (SDC 17.0830(1).) This is to be distinguished from the Illinois Act, Sec 601, which, in the event of voluntary leaving without good cause, simply excludes the employee from benefits for the first six weeks. In addition, the Illinois Act specifically excludes benefits in cases where the leaving

is because of pregnancy. (Ill Rev Stats 1961, c 48, § 420.)

Appellant also cites the declaration of public policy in Section 100 of the Unemployment Compensation Act, that *involuntary* unemployment is a menace to the health, safety, morals, and welfare of the people, and that legislation is required to prevent its spread and lighten its burden and also cites the case of American Steel Foundries v. Gordon, 404 Ill 174, 88 NE 2d 465 (1949), wherein it is stated that the purpose of the Act is the relief of hardship caused by involuntary unemployment.

Appellee cites In re Bale, Boeing Airplane Co. v. Employment Security Dept., 63 Wash2d 83, 385 P2d 545 (1963), decided by the Washington Supreme Court. The court there reversed a decision of a lower court holding that good cause under the Washington Act means a cause attributable to the employment. Despite Boeing's argument that the Preamble to the statute established a legislative intent to deny benefits to all whose employment was not involuntary, the Court held that the Act permits benefits to those who cease employment for personal reasons without regard to whether the claimant has been involuntarily unemployed. The Court noted that since the disqualification for voluntarily leaving without good cause was for a period of a few weeks, after which benefits were to be paid, the Washington legislature intended benefits to be paid, after a penalty period, to persons who quit without good cause whether or not it was attributable to the employer. The opinion also points out that the failure of the legislature to enact bills limiting the good cause provision to situations "attributable" to the employment had probative value relative to the legislature's intent.

The Illinois Act, similar to the Washington Act, contains no "attributable" cause and provides for only six weeks penalty for leaving work without good cause. Thus, the benefits of the act are not limited only to involuntary unemployment.

The courts of certain other states without "attributable" clauses have denied benefits where the claimant leaves work to move to another locality with his or her family. Woodmen of the World Life Ins. Society v. Olsen, 141 Neb 776, 4 NW2d 923 (1942); Stone Mfg. Co. v. South Carolina Employment Security Commission, 64 SE2d 644 (So Car 1951). Just as is the case with pregnancy, our statute Section 500 anticipates this situation and specifically denies benefits in such case. The Illinois Act also excludes benefits where the claimant leaves his employment to go to a lesser labor market, to marry, to attend school, or is absent because of his domestic situation. (Ill Rev Stats 1961, c 48, § 420.) There is no provision prohibiting benefits where the worker leaves for corrective surgery. The Act does render an individual ineligible to receive unemployment benefits while he is receiving workmen's compensation. However, if otherwise eligible, he may receive the amount payable for unemployment in excess of the amount payable under workmen's compensation. (Ill Rev Stats 1961, c 48, § 436.)

██ Liberality in construction of the Act for the benefit of the unemployed worker has been approved repeatedly by the Illinois Supreme Court. Commonwealth Life & Accident Ins. Co. v. Board of Review of Dept. of Labor, 414 Ill 475, 111 NE2d 345; Ray, Schools-Chicago-Inc. v. Cummins, 12 Ill2d 376, 146 NE 2d 42.

██ ██ Since the Illinois legislature has not seen fit to limit good cause for leaving to situations where the cause is attributable to the employer by whom a

claimant is employed immediately prior to leaving work, we see no justification in attempting to read such a limitation into the act. The same could perhaps be said as to the argument that the good cause for leaving must be attributable to the worker's employment; however, we need not resolve that question here since Erickson's physical defect did result from his employment with his former employer, General Motors Company, and he left work for surgery in an attempt to cure this physical defect. His effort to cure a physical deformity was a compelling personal reason to leave work temporarily and constituted good cause for leaving.

It might be argued that because claimant reported back to the Barnes Corporation after the operation and conducted himself in accordance with the suggestions of the president and company doctor that he was employed until April 30, 1962. Such a conclusion would not affect the result, however, because claimant was either laid off for lack of work on that day or he left voluntarily for the good cause of finding an employer who would put him to work.

■ ■ The second question is whether Erickson was able to work and available for work on April 30, 1962. The Board of Review, in its decision, found that the claimant could no longer perform his job at John S. Barnes Corporation. It went on to find, however, that he was able and available for work. It is apparent that claimant sought employment and in less than a month was employed at a discount store. He was shortly thereafter offered a job as a vacuum cleaner salesman but elected to stay with the store. Appellant corporation admits that the general rule is that benefits are payable if the individual is able and available for suitable work. Mohler v. Department of Labor, 409 Ill 79, 97 NE2d 762 (1951), Stricklin v. Annunzio, 413 Ill 324, 109 NE2d 183 (1952). Ap-

pellant contends, however, that this rule should not apply in a case of voluntary leaving and cites Mills v. South Carolina Unemployment Compensation Commission, 28 SE2d 535 (So Car 1944) and American Steel Foundries v. Gordon, 404 Ill 174, 88 NE2d 465 (1949). We do not find these cases applicable and believe the rule set forth by the Supreme Court in the Mohler and Stricklin cases applies. Erickson was ready and willing to accept suitable work at a place where there was an available labor market. His mental attitude was certainly that of a person who is actively seeking to be gainfully employed. His attempts to return to Barnes, his age, his financial obligations to his family and his ultimate success in getting work all show his ability, availability and intent to work. It was not necessary that he be able to perform the precise duties of assembling pumps that he had performed prior to January 15, 1962.

The judgment of the Circuit Court of Winnebago County is accordingly affirmed.

Affirmed.

ABRAHAMSON, P. J. and CARROLL, J., concur.