Lee Roy Tucker, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued June 7, 1974, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Janet F. Stotland,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, July 9, 1974:

The Bureau of Employment Security, the referee, and the Unemployment Compensation Board of Review have all disapproved the appellant's claim in this case. Before these three decision-makers, claimant was not represented by legal counsel. Had he been, and had able counsel who represented him before this Court developed a record for him that would have convinced the Board that the employer, the Philadelphia Inquirer, did agree that he would not be transferred out of the West Philadelphia area, there would be basis for him to assert that the record would support him. However, that is not the case on the record before us.

It is not necessary to cite a long string of authorities for the well-established principle that the findings of the Board as to facts, if supported by the evidence, are conclusive. *Philadelphia Coke Division, Eastern Associated Coal Corporation v. Unemployment Compensation Board of Review,* 6 Pa. Commonwealth Ct. 37, 293 A. 2d 129 (1972). Here, by affirming the referee and the Bureau in denying benefits, the Board has necessarily concluded that there was no such agreement between claimant and his employer.

A careful review of the record leads us to hold that there is more than sufficient basis in claimant's own statements for the Bureau, the referee, and the Board to rule that the employer had not agreed at the time of claimant's employment to never reassign him. Normally, when any person is employed, he is employed to do a particular task at an assigned time, and at an assigned place. It does not follow that the employer agrees never to modify or change the task, the time, or the place. If the employer should decide to modify or change any of these and the change is reasonable, the employee must abide by the employer's decision at the risk of being ineligible for unemployment compensation if he refuses. *Druzak v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 481, 315 A. 2d 925 (1974).

On his initial application for benefits, claimant told the Bureau that the reason for his separation was that his job was eliminated. On the summary of interview, claimant stated his reason for unemployment was that he refused a transfer because the area to which he was being transferred was too dangerous. On claimant's petition for appeal, the reason given for his unemployment was that his job was being eliminated and he refused transfer 20 miles away to a more dangerous area when jobs were available in his old district. He further stated on this form that the transfer was being used as a method of terminating his employment because he wanted overtime pay.

At the hearing before the referee, claimant for the first time stated that he requested at the time of his employment that he should not be assigned to Northwest Philadelphia and the employer agreed. However, there are many of claimant's statements at the same time that modify this substantially. For example, in almost the next sentence in the record, claimant states that a fellow-worker had recently been assigned to the

Northwest Philadelphia area and he, claimant, had not been because the employer knew that he did not want to go, and that Northwest Philadelphia was closer for the fellow-worker. This seems to us to say that the employer tried at that time to accommodate claimant when it reasonably could, but certainly was not saying that it was bound by any agreement not to assign him to Northwest Philadelphia.

We will not labor this opinion by citing all the evidence which justified the Board's conclusion. However, in fairness to the Board, it might be useful to quote claimant's own summary of his situation:

"Claimant: I would like to make another statement in rebuttal. I was hired on August 23, 1971 as a Field Representative, with the idea that I would be made a District Manager when a position occurred. My starting pay was $128.50, plus $40 expenses. On May 26, 1972, the Company reorganized and I was made a District Manager at $140 a week, plus $40 a week expenses. On October 11, 1972, I was told that I was being transferred to the Northwest at no extra pay, and that I was now considered a Special District Manager and Vacation Relief, and I had to take the transfer or I would be terminated. I told the supervisor, Mr. Kilrain that I had no training for the job in the Northwest and I didn't want to transfer in the area because it was dangerous. I said I would be willing to transfer to the West Philadelphia or Center City area where I was hired to work. He said my job would be eliminated and someone would be hired from the Northwest because I probably wouldn't make out in that position. As far as he was concerned I was off the payroll as of Friday, October 13, 1972. The reason I was being transferred was he had no way of evaluating my present job of serving and collection from the customers and the company could not afford to pay me just for that. I told him I was hired on August 23, 1971 to do just that.

I asked Mr. Kilrain was Mr. Callaghan aware of his decision. He told me it was Mr. Callaghan's order. Mr. Callaghan is the Home Delivery Manager, Circulation Department. I feel the only reason I have been treated this way is in January 1972, about four weeks after Christmas, I complained about working seven days a week and not getting paid overtime for it. As a result I was called into the office to talk to Mr. Callaghan and Mr. Al Helgman, the Manager. We compromised on the amount of pay which was due me. On March 5, 1972, I was transferred to work for Mr. William Callick, until I complained about not getting paid for overtime. I was still working seven days a week. On July 19, 1972, I was transferred to Mr. George Brown's section. I was still working seven days a week and not getting paid for overtime. So I complained again about not getting paid for overtime and getting my two days off each week.

"On July 30, 1972, I was promoted and started getting paid overtime for seven days work a week as a District Manager. On the week of October 1, 1972, I was offered a transfer to the Northwest. I was released from the Company by Mr. Kilrain, with no pay or severance pay. I feel the company owes me 21 weeks of overtime—two days a week, plus vacation pay; severance pay for four weeks, and a bonus offered for new customers I got with the aid of some boys working for me. The period I am talking about is from March 5, 1972 through July 23, 1972.

"Referee: All right, I think I have enough. Is there anything else you would like to say, Mr. Tucker?

"Mr. Tucker: No."

Certainly this summary in no way emphasizes that claimant felt the employer was bound by an original agreement, if any, that he would not be transferred at a subsequent date, three positions later.

Accordingly, we enter the following

### ORDER

Now, July 9, 1974, the decision of the Unemployment Compensation Board of Review, dated July 27, 1973, in the above matter is affirmed.