EDITH SOHLER *vs.* DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & others.

Suffolk. January 5, 1979. — April 6, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Employment Security,* Discharge, Voluntary unemployment, Good
cause.

In a proceeding by a claimant seeking unemployment benefits, the
review examiner's finding that the claimant was disqualified from
receiving benefits under G. L. c. 151A, § 25(e)(2), was error where
there was no evidence to support a conclusion that she had been
discharged from her place of employment. [787-788]

In a proceeding by a claimant seeking unemployment benefits, gener-
al and subjective allegations of the claimant's dissatisfaction with
working conditions were insufficient to warrant a finding that she
left her work for good cause under G. L. c. 151A, § 25(e)(1). [788-789]

CIVIL ACTION commenced in the Municipal Court of the
City of Boston on November 15, 1977.

The case was heard by *DeGuglielmo,* J.

*David A. Sonenshein* for the plaintiff.

*Frank J. Scharaffa,* Assistant Attorney General, for
the Director of the Division of Employment Security.

HENNESSEY, C.J. The appellant left her job as a staff
nurse at a hospital on July 6, 1977. After a hearing held
on August 31, 1977, the Director of the Division of Em-
ployment Security denied Sohler unemployment benefits
on the ground that she had been discharged from her
employment for engaging in "deliberate misconduct, in
wilful disregard of the employing unit's interest." G. L.
c. 151A, § 25(e)(2), as amended through St. 1975, c. 684,
§ 78. The division's board of review adopted the review
examiner's decision. A judge of the Municipal Court of
the City of Boston affirmed the board's decision and re-

ported the case to this court. G. L. c. 151A, § 42. The record before us includes the evidence presented to the review examiner, his subsidiary findings of fact, and his conclusions of law.

We disagree with the reason advanced for denying the appellant unemployment benefits, i.e., that she was discharged for insubordination, because we conclude that the record does not support a finding that she was discharged at all. Nevertheless, we think that the denial of benefits was correct, despite the appellant's contention that she left her work voluntarily for good cause. See G. L. c. 151A, § 25(e)(1). The evidence does not warrant a finding of "good cause."

Sohler was employed as a staff nurse by the Massachusetts Rehabilitation Hospital from December 13, 1976, to July 6, 1977. On June 21, 1977, she submitted a letter of resignation dated June 17, 1977, to be effective within two or three weeks at her employer's discretion. It was decided that July 8, 1977, would be Sohler's last day of employment.

On the evening of July 6, 1977, Sohler had a disagreement with her supervisor over who, if anyone, had turned off an intravenous feeder. The details of this conversation are not clear from the record. However, at its close, the appellant was informed that she was being insubordinate and told that, although her resignation was effective within two or three days, she could leave that night "if she wanted to." The appellant left shortly thereafter.

At her hearing, the appellant denied being insubordinate but stated that she could not recall specific aspects of the conversation. No one appeared at the hearing on behalf of the hospital. However, the review examiner admitted in evidence a letter written by the supervisor which stated that, when the supervisor asked the appellant if she had shut off the intravenous feeder, the appellant said "it was not she who did it—one word led to another—I told Ms. Solar [*sic*] she was being insubordinate. She admitted she was."

After the hearing, the review examiner found that "the claimant submitted her resignation from her work on 6/21/77, to be effective 7/12/77 . . . [and] that the claimant was discharged from her work on 7/6/77, due to her insubordination and conduct unbecoming a professional nurse." The examiner further stated that, "Separation for the reasons of insubordination is deemed to be deliberate misconduct, in wilful disregard of the employing unit's interest, within the meaning of Section 25(e)(2) of the Law."

1. The appellant contends that the review examiner's decision is not supported by substantial evidence and, as such, requires reversal. She rests this contention on two grounds: (1) uncorroborated hearsay, i.e., the supervisor's letter, cannot as a matter of law constitute substantial evidence of deliberate misconduct, even before an administrative tribunal; and (2) even if uncorroborated hearsay could, in some circumstances, constitute substantial evidence of deliberate misconduct, the supervisor's letter in this case did not.

The appellant relies on *Sinclair* v. *Director of the Div. of Employment Security*, 331 Mass. 101, 102 (1954), to support her first contention. However, *Sinclair* was decided before the enactment of the State Administrative Procedure Act, G. L. c. 30A, and in *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434, 437 n.2 (1978), we left open the question whether *Sinclair* remains good law. We need not decide the point in this case either, because we find no evidence whatsoever to support a conclusion that the appellant was discharged from her place of employment. As a result, we are unconcerned with whether her conduct amounted to deliberate misconduct within the meaning of § 25(e)(2).

Both the supervisor's letter and the appellant's own testimony establish that the appellant was told that she could leave *if she wanted to*. Moreover, both parties in their briefs and arguments before this court characterized the appellant's July 6, 1977, departure as a prema-

ture resignation and argued that she left her position voluntarily. Finally, in its response to the division's Request for Separation and Wage Information, the hospital replied, "Edith Sohler has resigned her position with this facility. Work was available." We have before us no evidence to the contrary and therefore hold that Sohler's disqualification under § 25(e)(2) was error.

2. Since it has been shown that the appellant left her position voluntarily, she argues that she is entitled to benefits because she left her work for good cause under § 25(e)(1). We conclude that good cause was not shown. The review examiner made no finding with respect to this issue, and ordinarily we would remand the case for a new hearing. However, in anticipation that the § 25(e)(1) issue would be relevant to the review examiner's decision, and presumably in light of the hospital's response to the division's Request for Separation and Wage Information, the appellant introduced evidence below establishing what, in her view, amounted to good cause. We have reviewed that evidence and conclude that the appellant failed in her efforts.[1]

The appellant contends that she left her employment because of intolerable working conditions, beyond her control, which made it impossible for her to carry out her professional responsibilities in an acceptable manner and to deliver good medical care. More specifically, the appellant points to confusion over job assignments, lack of procedures for coordinating treatment among shifts, inadequate record keeping, failure to establish bowel and urinary voiding schedules, and other like phenomena which caused "constant tension and frustration on the job" and which "severely hurt her morale." Even assuming these contentions to be true, the appellant has fallen

---

[1] The burden of proof as to all aspects of eligibility for unemployment benefits, including the burden of establishing good cause, rests with the worker. See *Conley* v. *Director of the Div. of Employment Security*, 340 Mass. 315 (1960); *Doninelli Unemployment Compensation Case*, 169 Pa. Super. Ct. 117 (1951).

far short of establishing good cause within the meaning of § 25(e)(1).

We are aware of no decision in this or any other jurisdiction holding such general and subjective dissatisfaction with working conditions to satisfy the statutory language. The term "intolerable working conditions" has generally been understood to import substandard sanitation, temperature, ventilation, or other like factors which may contribute to the physiological discomfort or demise of exposed employees. See, e.g., [1975] 6 Unempl. Ins. Rep. (CCH) (Mass.), pars. 1975.527, 1975.977, 1975.981. We are unwilling to expand the term in the manner that the appellant suggests.

If the appellant had demonstrated that she was required to perform work clearly antithetical to that for which she was initially employed, our result might well be different. See, e.g., id. at pars. 1975.336, 1975.955; [1975] N.Y. Unempl. Ins. Rep. (CCH), pars. 1975.955, 1975.961; *Welker Unemployment Compensation Case*, 180 Pa. Super. Ct. 534 (1956). Similarly, the appellant might have shown that the substandard working conditions were such that her affiliation with the hospital subjected her to professional sanction, criminal prosecution, or liability in tort. See, e.g., [1975] 6 Unempl. Ins. Rep. (CCH) (Mass.), par. 1975.335; [1975] N.Y. Unempl. Ins. Rep. (CCH), par. 1975.969. The appellant here has made no such claims. The evidence she presented merely revealed her over-all disappointment with the manner in which the hospital was run and, perhaps, with the haphazard and less than adequate care being offered by other employees. Such disappointment does not rise to the level of good cause.

*Judgment affirmed.*