MARILYN DAVIS, Plaintiff-Appellee, *v.* THE BOARD OF REVIEW OF THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellants.

First District (4th Division)   No. 83—1436

Opinion filed June 14, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Leslie J. Rosen, Assistant Attorney General, of counsel), for appellant.

Mary Kennedy and Louis P. Svendsen, both of Chicago, for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff brought this action seeking administrative review of a final decision by defendant, the Illinois Department of Labor Board of Review, that she was ineligible for unemployment benefits because she left her employment voluntarily without good cause attributable to her employer. Defendant appeals from the circuit court's order reversing its decision, contending that the evidence amply supported its finding and decision. Plaintiff contends the appeal is moot because plaintiff's benefits have been paid to her, and there are no statutory

means for recoupment.

On April 2, 1982, plaintiff left her employment with the Southern School (School), and on April 4, 1982, applied for unemployment insurance benefits. On April 20, 1982, Jerry Rothman, executive director of the School, wrote to the Department of Labor suggesting that plaintiff was not eligible for benefits because she had voluntarily left her employment, the School did not ask her to leave and no consideration was given to terminate her. The record also contains a letter of resignation from plaintiff to Rothman dated January 25, 1982.

Plaintiff's claim for unemployment insurance benefits was denied by the Department of Labor claims adjudicator who found that on April 2, 1982, plaintiff voluntarily left work without good cause attributable to her employer. Plaintiff took an administrative appeal to a referee, who, following an evidentiary hearing, found that plaintiff was hired to set up preschooling on October 3, 1978, for three- to five-year-old children but that by September 1981 most of the funding had been cut off and she was required to work in a fully funded program for the emotionally disturbed. By the end of the year she was working completely with the emotionally disturbed. The record shows that by January 25, 1982, plaintiff had found the work extremely stressful, and she was not getting any help. Further, she was not trained or qualified to handle these children, and as a result, she resigned, effective April 2, 1982. The referee made the following conclusion, which was later affirmed.

> "Sometime, in 1981, the Claimant [plaintiff], by having done the work so long, had accepted its conditions, so that when she left, she departed for reasons other than those connected with the employment. There was no medical evidence that she was physically unable to perform her work and was, therefore, not exempt from the disqualification provisions of Section 601A of the Act."

Plaintiff, the only witness at the administrative hearing, testified that on October 3, 1978, she was hired by the School as a child development coordinator to set up a preschool program for normal children. Her duties were primarily administrative and consisted of hiring and supervising the teachers, working with parents and recruiting children. She possessed an undergraduate degree in working with mentally retarded children, and a master's degree in early childhood education. She was required to incorporate the emotionally disturbed teenagers from an agency (apparently a community mental health agency to which the School was administratively connected) into the program for normal preschoolers, children aged three to five years

old. When she started work, she advised her employer that she had no experience with emotionally disturbed children.

From September of 1980 until September of 1981, funding for the preschool program was diminishing, and in addition to her administrative duties she was required to serve the seriously disturbed children whom the School first began to accept during this period. Plaintiff explained that emotionally disturbed children presented behavior disorders involving aggressive and destructive behavior, but mentally retarded children did not. She also maintained that she was not trained, qualified, or experienced in teaching emotionally disturbed children. But when she explained that she did not feel qualified to teach such children and asked for assistance, she received none.

In addition to her new duties she was also required to supervise a student teacher even though she had asked for a trained professional to help her in the classroom. As a result of her increased duties, she was required to work late and, occasionally, on Saturdays to keep up with her duties. When another director was hired, she found herself reporting to two supervisors with no means of resolving conflicts between them. She asked for a change of supervisors without results. She developed headaches and became very upset. A professional psychotherapist, who was not a physician, advised her the job was causing her stress that would continue as long as she remained employed in her position. She explained this to her supervisor, but he offered no assistance. On January 25, 1982, she gave 10 weeks' written notice to her employer.

In reversing the administrative decision the circuit court found that the work was stressful and that plaintiff had good cause to resign when she was required to teach emotionally disturbed children for which she was not qualified.

Plaintiff initially contends that the issue of plaintiff's entitlement to unemployment insurance benefits is rendered moot by the payment of benefits to plaintiff with no recourse available to defendant to recoup the money paid. Plaintiff's argument is based upon her reading of section 900 of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 490), which, plaintiff argues, does not allow defendant to recoup benefits paid to plaintiff even if this court should decide that the circuit court was in error in reversing the administrative decision. While section 900, dealing specifically with recoupment, speaks of repayment of benefits only when there has been a reconsidered finding or reconsidered determination made by either a claims adjudicator or a referee, it is argued that section 900 should be read in conjunction with section 706 (Ill. Rev. Stat. 1983, ch. 48, par. 456),

which requires prompt payment of benefits and provides that if benefits are paid pursuant to a decision subsequently overturned, the "employer's benefit wages" under section 1502 (Ill. Rev. Stat. 1983, ch. 48, par. 572) shall be computed as if such had been the finding or determination of the claims adjudicator. Plaintiff concedes that a decision of this court on the issue of the propriety of the trial court's actions concerning benefits paid to her would have an effect, under sections 706 and 1502 of the Act, on the employer, but argues the issue is moot since the employer is not a party to this appeal.

■ An appeal may be rendered moot where a party accepts the judgment and complies with it as in the recent case of *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 437 N.E.2d 638. There, a taxpayer did not challenge an appellate court decision and paid the taxes due after the supreme court had granted leave to appeal. However, where a party does not accept a judgment against him, the cause is not moot simply because he pays the judgment even if no restitution could follow reversal since an erroneous judgment is an injury *per se* from which the law will intend he is or will be damnified by its continuing unreversed. *Beacon Home Improvement Co. v. Paulsen* (1951), 343 Ill. App. 468, 470, 99 N.E.2d 586.

Defendant maintains that the employer reasonably modified the employee's tasks and reasonably assigned her additional duties, due to economic considerations involving the change in funding. However, section 601 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 431) does not require that the employer's actions be unreasonable before the employee is eligible for benefits, but focuses, instead, upon the issue of "good cause attributable to the employing unit." The statute does not require that the employer be at fault, but is designed to remedy the economic difficulties following from involuntary unemployment generally.

■ With regard to the issue of "good cause," the defendant argues that plaintiff proved only "subjective dissatisfaction" with her working conditions and relies upon *Sohler v. Director of Division of Employment Security* (1979), 377 Mass. 785, 388 N.E.2d 299, where confusion over job assignments and poor procedures causing tension on the job were found to be insufficient cause. (*Cf.* also *Berk v. Director of Division of Employment Security* (1982), 387 Mass. 1003, 441 N.E.2d 531.) Defendant also argues that "stress" does not constitute "good cause" under the statute, and that plaintiff was required to produce evidence from a licensed practicing physician that she was physically unable to perform her work. While plaintiff did not meet the requirements of section 601(B)(1) by providing proof from a prac-

ticing physician that she was physically unable to perform her work, plaintiff did present evidence that a psychotherapist advised her that the employment was causing her stress which would continue as long as the employment continued. In this regard we note that other jurisdictions have held that good cause may consist of a reasonable subjective fear of harm to an employee's health, even absent the advice of a physician. (See *Rabago v. Unemployment Insurance Appeals Board* (1978), 84 Cal. App. 3d 200, 210-11, 148 Cal. Rptr. 499, 506-07, and authorities cited there.) We think that the circuit court properly considered this as some evidence that plaintiff left work for a good cause attributable to her employer.

Although the Illinois statute declares that an individual is ineligible for benefits for the week in which he has left work "voluntarily without good cause attributable to the employing unit," the statute does not define good cause. The Act is to be liberally construed for the benefit of the unemployed worker. (*John S. Barnes Corp. v. Board of Review* (1965), 55 Ill. App. 2d 102, 110, 204 N.E.2d 20.) It has been held that a reduction in pay may constitute "good cause" for leaving work depending on the attendant circumstances. *Keystone Steel & Wire Division v. Department of Labor* (1976), 37 Ill. App. 3d 704, 346 N.E.2d 399.

Although the unemployment compensation statutes differ in each state, most have a provision allowing a worker to be paid benefits if he leaves work for "good cause," even though "voluntarily." Defendant maintains that plaintiff's responsibility did not change so dramatically over time as to give her good cause for quitting, citing *Tucker v. Commonwealth Unemployment Compensation Board* (1974), 14 Pa. Commw. 262, 264, 319 A.2d 195, 196, where the court said:

> "Normally, when any person is employed, he is employed to do a particular task at an assigned time, and at an assigned place. It does not follow that the employer agrees never to modify or change the task, the time, or the place. If the employer should decide to modify or change any of these and the change is reasonable, the employee must abide by the employer's decision at the risk of being ineligible for unemployment compensation if he refuses."

However, a substantial, unilateral change in the employment may render the job unsuitable and entitle the worker to benefits even if he leaves voluntarily. In *National Aluminum Corp. v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review* (1981) 59 Pa. Commw. 359, 429 A.2d 1259, for example, a worker who was performing secretarial tasks was gradually required

to perform solely clerical functions because she was proficient at them, even though she feared losing her secretarial skills. She was held eligible for compensation benefits when she voluntarily left her employment. In *Jones v. Review Board* (Ind. App. 1980), 399 N.E.2d 844, 845, the court said:

> "If the working conditions are unilaterally changed by the employer and the employee chooses to terminate the employment rather than accept the change, the employee will be entitled to unemployment benefits since the reason for termination was a change in work agreed to be performed by the employee. Such reason constitutes good cause."

■ Plaintiff's uncontradicted testimony established that a substantial change in her working conditions took place over a one-year period significantly changing her duties for the worse. (*Cf. Martinez v. Industrial Com.* (Colo. App. 1982), 657 P.2d 457 (boys club branch director required to perform duties of shop director or gym director was entitled to compensation since there was a change in working conditions, not simply dissatisfaction with working conditions).) Where an employee is given additional duties beyond his capacities, resulting in "work pressures," resignation has been held not to disqualify the worker for benefits on the basis of quitting work without just cause. (*Krzyston v. Industrial Com.* (1977), 52 Ohio App. 2d 109, 368 N.E.2d 74 (secretary with significant administrative duties was assigned 300 workmen's compensation decisions to be typed).) An employee should make reasonable efforts to resolve conflicts arising from the employment. (*Richards v. Daniels* (1981), 1 Ark. App. 331, 615 S.W.2d 399 (a kindergarten teacher who claimed other teachers operated as a "clique" excluding her and creating an uncomfortable situation more than she could bear was entitled to benefits where her three-year effort to resolve the conflict by notifying her superiors was unavailing).) In this case, by the fall of 1981, it was clear that plaintiff's duties had substantially changed from those she had agreed to undertake at the beginning of her employment. The record is uncontradicted that she made numerous and substantial attempts to resolve the situation with her superiors, but her efforts were unsuccessful.

We conclude that the uncontradicted evidence established that the plaintiff was required to perform work for which she was not qualified, and which she felt she was unable to perform competently, thus creating a stressful situation. Therefore, she left her employment for good cause attributable to the employing unit within the meaning of the statute. Defendant's decision was contrary to the manifest weight of the evidence presented, and the circuit court did not err in revers-

ing the administrative decision.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.