LEE TAYLOR, APPELLEE, V. COLLATERAL CONTROL CORPORATION,
APPELLEE, COMMISSIONER OF LABOR, STATE OF NEBRASKA,
APPELLANT.
355 N.W.2d 788

Filed October 5, 1984.   No. 84-096.

Pamela A. Mattson, for appellant.

Jerom E. Janulewicz, for appellee Taylor.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

WHITE, J.

Lee Taylor, the claimant-appellee, filed for unemployment compensation benefits under the Nebraska Employment Security Law. Both the claims deputy and the Nebraska Appeal Tribunal determined that the claimant voluntarily left his employment in early August 1982 without good cause, and disqualified claimant from receiving benefits for a period of 8 weeks. On appeal to the district court for Holt County, the court found that on August 3, 1982, the claimant's employment was terminated for the employer's convenience and reversed the decision of the appeal tribunal. We reverse and order the decision of the appeal tribunal reinstated.

The scope of review in this court is de novo on the record from the district court, and "it is the duty of this court to retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof." *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 169, 318 N.W.2d 1, 2 (1982). See,

also, *School Dist. No. 21 v. Ochoa*, 216 Neb. 191, 342 N.W.2d 665 (1984).

Neb. Rev. Stat. § 48-628 (Cum. Supp. 1982) provides in part:

> An individual shall be disqualified for benefits:
>
> (a) For the week in which he or she has left work voluntarily without good cause, if so found by the Commissioner of Labor, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case.

Keeping in mind that in voluntary termination cases the burden of proof is on the employee to prove that the leaving was for good cause, *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979), we find the following to be the factual situation.

Claimant began his employment in October 1981 for Herd Co. Thunderbolt Feed Lot, a subsidiary of Collateral Control Corporation, as a night watchman for the cattle feedlot. His hours of employment were from 5 p.m. until 7 a.m. the following morning. In February 1982 the claimant was promoted to the position of security foreman. The job description for this position, a copy of which was introduced into evidence and which bears the claimant's signature, provided that "[h]is duties include patrolling all areas of the feedlot at all times making sure that the cattle are comfortable and have feed and water . . . ." Apparent from the record, and not seriously disputed, is the conclusion that this job necessarily included lifting bales of hay and that such a duty could be described as "heavy" rather than "light" work.

In July 1982 the claimant was hospitalized for a period of 10 or 11 days for a gall bladder condition. After obtaining a release from his physician that his work be restricted to "light" duty, claimant reported for work as usual on the evening of August 1, 1982. When claimant reported for work, he noticed that he did not have a timecard. Instead he found a note directing him to report for work the following morning, August 2, as he had been transferred to the day shift. Claimant was assigned work of watching a corn cracking machine and of washing the machine after the task was finished. He was then asked to lift

hay bales. He declined because of his physical condition. His supervisor spoke with claimant's physician on the telephone and verified the claimant's light work restriction. As no other light work was then available and since claimant's "side hurt a little bit," claimant informed his supervisor that "I'll just go home and I'll get some medicine and I'll be back in the morning." Claimant left work at approximately 2 p.m., August 2, 1982.

On August 3 he reported for work at 7 a.m. and was assigned work sweeping near a pit. As a result of the sweeping by another employee, stones were deposited in the pit, and a supervisor directed the claimant and the other employee to remove them. A dispute arose whether Taylor should go down into the pit to remove the stones or to remain on the surface. In any event, Taylor refused to continue and was told to check out for the day.

Taylor reported for work the following day and was assigned work painting. Taylor refused and announced to the manager that he considered himself laid off the previous day as there was no light work available for him. Taylor handed his timecard to his manager and did not report to the feedlot again.

No evidence was presented that the employer did not in good faith assign to Taylor alternative work it considered to comply with his "light duty" restriction. There is, however, sufficient evidence that on August 4, 1982, the employer had light duty work for Taylor, which he refused to perform. Taylor has thus failed to prove that his termination was anything but voluntary and without good cause.

REVERSED.