KATHRYN A. NORMAN, APPELLANT, V. RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, AND PAMIDA, INC., APPELLEES.

370 N.W.2d 147

Filed July 5, 1985. No. 84-711.

Gary L. Fischer, for appellant.

Paul D. Kratz, for appellee Sorensen.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Kathryn A. Norman appeals from an order of the district court for Douglas County affirming a decision of the Nebraska Appeal Tribunal. The tribunal had affirmed a deputy's assessment of a 7-week disqualification from unemployment benefits, based upon a finding that Norman had left work voluntarily and without good cause. We affirm the order of the district court.

We first note that this court reviews appeals under the Nebraska Employment Security Law de novo on the record and that it is the duty of the Supreme Court to retry the issues of fact and reach independent conclusions. *Taylor v. Collateral Control Corp.*, 218 Neb. 432, 355 N.W.2d 788 (1984); *School Dist. No. 21 v. Ochoa*, 216 Neb. 191, 342 N.W.2d 665 (1984). Having reviewed the record de novo, we find the following facts.

Norman was employed by Pamida, Inc., as an administrative traffic clerk performing administrative and clerical duties beginning March 1983, when Pamida purchased a company then employing Norman in the same position. Effective August 29, 1983, Norman was transferred to a position in the company's warehouse due to a realignment of positions in her old department and Norman's lack of seniority. Her new duties included lifting large boxes onto a conveyor belt, removing merchandise from the boxes, ticketing the merchandise, and repacking it. Norman first discovered the physical demands of the new position when she reported for her first day at that position. She immediately informed her supervisors of her displeasure with the change and was told that they would check to see if there was some mistake. In the meantime, she was to work the new job.

Norman did not work on August 30 and 31. However, she did notify her supervisor on August 31 that she was incapable of

doing heavy lifting due to back problems, and provided medical evidence to that effect. As a result, Pamida altered her duties to eliminate the requirement of lifting boxes onto the conveyor. Also, Norman was advised that she could apply for clerical positions as they became available and was referred to the Pamida personnel department.

Norman next reported for work on September 1, 1983. During the day, she hyperventilated, became dizzy, and was taken to the hospital by her employer. She worked again on September 6, 1983, after the Labor Day weekend, and again hyperventilated, passed out, and was taken to the hospital. Norman had, on at least one occasion, experienced similar hyperventilation and dizziness while performing clerical duties for Pamida.

Sometime prior to her resignation, Norman had filled out an application for a secretarial position which had opened up. On September 7 she was told by the personnel department to come in and speak with them about the opening. Rather than follow up on that job vacancy, Norman resigned the next day.

Norman first suggests that the district court erred in finding that she left her employment voluntarily and without good cause. She asserts that her health problems forced her to resign and that her employer did not make reasonable accommodations to her health problems. Pamida and Norman submitted evidence on this disputed fact question. We agree with the district court in its statement that "[e]ven though petitioner's [Norman's] duties were changed, her salary remained the same, the employer immediately remedied any physical problems regarding the new position and, the employer was making an effort to transfer petitioner Norman back into another clerical position."

"In voluntary termination cases the burden of proof is on the employee to prove that the leaving was for good cause." *McClemens v. United Parcel Serv.*, 218 Neb. 689, 691, 358 N.W.2d 748, 750 (1984). Norman did not meet her burden. It is clear that she considered the lateral transfer to the warehouse position to be a demotion and attempted to show that the motive for the transfer was other than a business judgment.

On her first day on the job, Norman immediately stated that,

due to back problems, she could not do heavy lifting. Upon receiving of medical evidence to that effect, the company eliminated the lifting requirement. After her dizzy spells and hyperventilation, the company attempted to find her a clerical vacancy by contacting the personnel department. Instead of meeting with personnel workers of the company to discuss this vacancy, Norman chose to resign. This court believes, as did the appeal tribunal and the district court, that Pamida was attempting to transfer Norman back to a clerical position when she voluntarily left her employment. Clearly, the company was making reasonable accommodations for Norman's health.

It should also be noted that there is no evidence in the record directly linking Norman's hyperventilation problems with the warehouse position. Norman's admission that she experienced similar hyperventilation problems while performing clerical duties belies such a causal connection.

Norman also assigns as error the trial court's failure to apply Neb. Rev. Stat. § 48-628 (Cum. Supp. 1982). That section states in pertinent part:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> (c) For any week of unemployment in which he or she has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner or to accept suitable work when offered him or her, or to return to his or her customary self-employment, if any, and the commissioner so finds, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner, and his or her total benefit amount to which he or she is then entitled shall be reduced by an amount equal to the number of weeks for which he or she has been disqualified by the commissioner.

Norman suggests that, because Pamida so changed her duties, this was a case of refusal of unsuitable work. Such a characterization of this case is not correct. Norman was employed and left without good cause. Pamida's actions were clearly within the perimeters of § 48-628(a). Such actions were

not an offering of unsuitable work within the meaning of § 48-628(c), which simply states an additional reason for disqualification from benefits when an unemployed person refuses an offer of "suitable" work and chooses to remain unemployed.

The order of the district court is affirmed.

AFFIRMED.