MURIEL THIESSEN STACKLEY ET AL., HEIRS AT LAW OF THEODORE W. STACKLEY, DECEASED, APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF ENVIRONMENTAL CONTROL, AND RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEES.

386 N.W.2d 884

Filed May 16, 1986.    No. 85-667.

Noel S. DeKalb, for appellants.

Jerry D. Slominski, for appellee Sorensen.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

The heirs of Theodore W. Stackley appeal the judgment of the district court for Lancaster County rejecting Stackley's claim that he voluntarily left his employment for "good cause" within the purview of Neb. Rev. Stat. § 48-628 (Reissue 1984). The district court's judgment affirmed a decision of the Department of Labor's appeal tribunal which had sustained an initial departmental order imposing an 8-week disqualification regarding Stackley's unemployment benefits. Stackley's heirs

properly revived this action when Stackley died shortly after testifying at the district court proceeding. See Neb. Rev. Stat. § 25-1410 (Reissue 1979).

The sole issue in this case is whether Stackley had "good cause" to voluntarily leave his employment. Under § 48-628 an individual is disqualified from receiving unemployment benefits "for not less than seven weeks nor more than ten weeks" following termination of employment if "he or she has left work voluntarily without good cause." To avoid disqualification from unemployment benefits under § 48-628, an employee, who has voluntarily left employment, has the burden of proving there was good cause for the employee's terminating an employment relationship. See *Taylor v. Collateral Control Corp.*, 218 Neb. 432, 355 N.W.2d 788 (1984). In appeals regarding § 48-628 the Supreme Court reviews the record de novo, retries the issues of fact involved in the findings challenged, and reaches an independent conclusion regarding such issues of fact. See, *Norman v. Sorensen*, 220 Neb. 408, 370 N.W.2d 147 (1985); *Taylor v. Collateral Control Corp., supra*.

Stackley began working as an "Engineer III" for the Nebraska Department of Environmental Control (NDEC) in April 1979. The job description for Stackley's employment with NDEC included the following examples:

1. Supervises and participates in the conduct of major environmental engineering investigations, surveys and studies; prepares reports on interpretation of findings.

2. Supervises and coordinates the work of subordinate engineers and specialists.

3. Confers with public officials, contractors, safety and consulting engineers and citizens regarding environmental engineering projects and studies; supervises and participates in the necessary investigations and negotiations; provides recommendations and information.

4. Plans and conducts training programs for technical or sub-professional personnel as required.

5. Presents talks before lay and professional groups to promote environmental programs.

6. Prepares technical correspondence and reports.

Stackley tendered his resignation from the department on October 12, 1983, after a series of disputes with the acting director of that department. The disputes involved different views of the proper role of professional engineers in the department's decisionmaking process. Specifically, Stackley believed that it was the responsibility of the department's engineering division to review any proposed modification in operation of waste water treatment facilities. During the last year of his employment, Stackley became concerned that nonprofessionals in the department's water and waste management division were making technical recommendations to the operators of treatment facilities without first consulting the department's engineering division. Stackley was "extremely depressed" over the situation and felt he was being "personally attacked" by the department's acting director.

The record establishes beyond question that Stackley left his employment with NDEC because he was dissatisfied with the acting director's perceived inability to properly coordinate the department's administrative decisionmaking process. While testifying before the district court, Stackley claimed, for the first time, that the departmental method of excluding professionals from initial stages of any decisionmaking process violates Nebraska statutes governing activities of professional engineers. See Neb. Rev. Stat. §§ 81-839 et seq. (Reissue 1981). The record, however, does not support a finding that such statutes were specifically considered or involved in the department's decisionmaking process. Stackley also testified that the department's decisionmaking process contravened certain provisions of the professional engineers' "code of practice." Again, however, the record does not reflect that Stackley was required to perform or approve any conduct which placed his professional license in jeopardy. At best, the record discloses Stackley's personal and professional concern that the acting director did not fully appreciate Stackley's status as a licensed professional engineer throughout the decisionmaking process of the department.

Under § 48-628 an employee has "good cause" for voluntarily leaving employment if the employee's decision to

leave is prompted by a circumstance which has "some justifiably reasonable connection with or relation to the conditions of the employment." *Glionna v. Chizek*, 204 Neb. 37, 40, 281 N.W.2d 220, 223 (1979). In *Sohler v. Director of Division of Employment Security*, 377 Mass. 785, 388 N.E.2d 299 (1979), the Supreme Judicial Court of Massachusetts considered a contention similar to that advanced by Stackley. In *Sohler* a professional nurse contended that she left her job because improper management of a hospital "made it impossible for her to carry out her professional responsibilities in an acceptable manner and to deliver good medical care." *Id.* at 788, 388 N.E.2d at 301. Nurse Sohler maintained there was "confusion over job assignments, lack of procedures for coordinating treatment among shifts, inadequate record keeping, failure to establish bowel and urinary voiding schedules, and other like phenomena which caused 'constant tension and frustration on the job' and which 'severely hurt her morale.' " *Id.* The nurse, however, did not show that the working conditions "were such that her affiliation with the hospital subjected her to professional sanction, criminal prosecution, or liability in tort." *Id.* at 789, 388 N.E.2d at 301. The court rejected the notion that "such general and subjective dissatisfaction" with one's job constituted "good cause" for leaving one's employment. *Id.* The court concluded: "The evidence she presented merely revealed her over-all disappointment with the manner in which the hospital was run and, perhaps, with the haphazard and less than adequate care being offered by other employees. Such disappointment does not rise to the level of good cause." *Id.* at 789, 388 N.E.2d at 302.

Under the facts of this case, we do not believe Stackley's personal and professional dissatisfaction with the NDEC's decisionmaking process rose to the level of good cause under § 48-628. The acting director's method of administering NDEC's programs may have pinched Stackley's professional pride, affected his morale, and diminished his effectiveness at his job. In this context, however, such circumstances did not constitute "good cause."

Stackley's heirs attempt to buttress their claim of "good

cause" regarding Stackley's reasons for leaving his employment by contending that the original conditions of Stackley's employment were unilaterally changed by his employer. Although a unilateral change in employment conditions may, in a given case, constitute "good cause" for voluntarily leaving one's employment, the evidence in this case falls far short of establishing any such unilateral change in the overall conditions of Stackley's employment. Stackley was never reassigned to any duties or job other than as set forth in the job description. The evidence shows a policy disagreement regarding the role of engineers in the department's decisionmaking process. Under the circumstances of this case, such disagreement, no matter how legitimate, did not provide Stackley with "good cause" for voluntarily leaving his employment.

The judgment of the district court is affirmed.

AFFIRMED.