PONDEROSA VILLA, CITY OF CRAWFORD, APPELLEE, V. IRENE HUGHES, APPELLANT, RONALD E. SORENSEN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEE.

399 N.W.2d 813

Filed January 30, 1987.    No. 86-175.

Terry Curtiss of Curtiss, Moravek, Danehey & Curtiss, P.C., for appellant.

H.W. Snyder, for appellee Ponderosa Villa.

Laureen Van Norman, for appellee Sorensen.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

Irene Hughes, the claimant, appeals from the decision of the district court for Dawes County reversing the Nebraska Appeal Tribunal and denying Hughes unemployment compensation benefits. We reverse.

Hughes, a licensed practical nurse, was health service supervisor of nursing services (HSS) at Ponderosa Villa nursing home at the time the Legislature passed 1985 Neb. Laws, L.B. 253. The bill changed Neb. Rev. Stat. § 71-2017.01(11) (Reissue 1986) to require that the position of supervisor be held by a registered nurse. As a result Hughes was no longer qualified for her job as HSS.

On May 16, 1985, Dixie Moody, administrator for Ponderosa Villa, informed Hughes of the legislative change and offered to demote her to a position as a staff nurse, full time, on a "4-2" schedule. This was the same position she held prior to her promotion to HSS. On July 26, 1985, Hughes resigned.

Hughes applied for benefits with the Department of Labor's division of employment on August 20, 1985. On August 27 the Department of Labor notified her that she was eligible for benefits and that "it is determined this leaving was with good cause." Ponderosa Villa, City of Crawford, appealed to the Nebraska Appeal Tribunal. The notice of hearing before the tribunal stated: "NOTICE IS HEREBY GIVEN that a hearing will be held on the issue(s) marked below . . . . Whether the claimant voluntarily left his/her employment without good cause or was discharged for misconduct connected with his/her work." After the hearing the Nebraska Appeal Tribunal affirmed the decision of the claims deputy, finding that Hughes left her job with good cause.

Ponderosa Villa appealed the decision of the Nebraska Appeal Tribunal to the district court for Dawes County. The

district court reversed, setting forth its findings and rationale as follows:

> The Court being fully advised in the premises finds that the legislature made it mandatory that Claimant-Respondent is not qualified for her most recent job with Employer-Appellant or for any similar position. She is qualified for the job she previously held with Employer-Appellant, which is materially the same job she was offered after her disqualification. There is no evidence that the employment offered was not on as good terms as could be expected for the profession in that place at that time. She was not entitled to refuse the offer of employment and she is and was, from the time of her refusal, unavailable for work.

The appellant sets forth two assignments of error. The first is that the court erred in finding the appellant "unavailable for work," and second, that it incorrectly disqualified the appellant from benefits, in that the appeal tribunal was correct in determining that the appellant left voluntarily, but with good cause. We find merit in both assignments of error and reverse the district court's decision.

Although no express reference to statutory authority for the disqualification of Hughes was made, the language the district court used in the formulation of its findings seems to intimate that Hughes failed to meet the qualifications spelled out in either Neb. Rev. Stat. § 48-627(c) (Cum. Supp. 1986) or Neb. Rev. Stat. § 48-628(c) (Cum. Supp. 1986).

The district court specifically found Hughes to be "unavailable for work" and therefore to be ineligible for benefits absolutely. Section 48-627(c) requires the employee to be found to be available for work in order to be eligible for benefits for any given week. The result of being "unavailable for work" is to make the unemployed individual ineligible for benefits for the week in which he or she is unavailable. This statute clearly was incorrectly applied to the case at hand for two reasons. First, § 48-627 does not address the reasons why a person became unemployed, nor is it concerned with the threshold questions of eligibility. Section 48-627 describes the weekly requirements for continuing to be eligible for benefits.

See *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985). After a person becomes unemployed, he or she must remain able to work to receive benefits. *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 318 N.W.2d 1 (1982). In the case before us we are concerned only with whether Hughes left her job with or without good cause, not whether she was unavailable for work in any certain week after becoming unemployed. Second, the result of finding a claimant "unavailable for work" is to disqualify the claimant only for the week in which he or she was unavailable. The district court decided an issue not before it, and any decision thereon was void.

The district court also found that Hughes was not entitled to refuse the offer of employment because she failed to prove the job "was not on as good terms as could be expected for the profession in that place at that time." Such proof is relevant when the claimant may be disqualified under § 48-628(c). This section disqualifies persons refusing "suitable" employment. Under § 48-628(c), whether work is "suitable" or not is determined by looking at such things as training, experience, past earnings, and prospects for work in one's customary occupation. However, § 48-628(c) does not apply to someone when the refusal of a change in position results in a voluntary leaving. In *Norman v. Sorensen*, 220 Neb. 408, 370 N.W.2d 147 (1985), the claimant was transferred to another position. Her duties were altered, although her salary remained the same. The claimant quit and attempted to argue that the quit should be characterized as refusing an offer of unsuitable work under § 48-628(c). We rejected that argument, explaining that subsection (c) "states an additional reason for disqualification from benefits when an *unemployed* person refuses an offer of 'suitable' work and chooses to remain unemployed." (Emphasis supplied.) 220 Neb. at 412, 370 N.W.2d at 150. The claimant was determined to have left without good cause and therefore was disqualified under § 48-628(a)(1).

In this case Hughes was an employed person who refused a demotion and left. The correct inquiry for the district court was whether the leaving was with or without good cause. § 48-628(a)(1). The district court's finding that the claimant failed to prove the terms of the offer unsuitable misconceived

the issue.

In appeals under § 48-628(a)(1), we review the causes de novo on the record, retry the issues of fact, and come to independent conclusions regarding the findings challenged. *Stackley v. State*, 222 Neb. 767, 386 N.W.2d 884 (1986). To avoid disqualification under § 48-628(a)(1), the employee who voluntarily severed the employment relationship has the burden of proving that the leaving was with good cause. *Id*. We find that Hughes proved that she had good cause to quit and is eligible for benefits.

The demotion, if accepted, would have changed to Hughes' disadvantage almost every aspect of her employment. As HSS, Hughes received a monthly salary of $1,168, had a 5-day workweek, had 50 to 90 percent of her weekends off, and had holidays off unless needed. Her demotion to a staff nurse would have resulted in a wage cut to $5.90 per hour and, due to a 4-2 schedule, a decrease in the average number of hours worked per week, resulting in a substantial reduction of her earnings. The "4-days on, 2-days off" work schedule would result in Hughes' having only one weekend off (Saturday and Sunday off) every 7 weeks, as opposed to having the majority of her weekends off as HSS. Ponderosa Villa refused to negotiate alternative scheduling. Her duties would be reduced; she, who once held the position of supervisor, would now join the ranks of those she previously supervised. She would lose her paid holidays. All of these changes are related to employment conditions and are not personal in nature. See, *Stackley v. State, supra; Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979).

All of the changes resulting from the demotion, when taken together, are clearly not trivial. They are tangible and substantial and constitute good cause for Hughes to sever her employment with Ponderosa Villa.

Having found good cause, we determine that the disqualification under § 48-628(a)(1) does not apply, nor does any other disqualification apply. The decision of the district court is reversed.

REVERSED.

CAPORALE, J., concurring in part, and in part dissenting.

I agree that whether Hughes is available for work is not an issue. I must, however, dissent from that part of the opinion which concludes that Hughes did not leave her work "voluntarily without good cause" as contemplated by Neb. Rev. Stat. § 48-628(a)(1) (Cum. Supp. 1986). I would factually find that one who must be demoted because of legislative action and who refuses to accept the best job available for which she is qualified does not have good cause to terminate her employment.

BOSLAUGH, J., joins in this concurrence and dissent.