JOHN R. HANLON, COMMISSIONER OF LABOR, APPELLEE, V. JOHN C. BODEN, APPELLEE, AND OMAHA SYMPHONY ASSOCIATION, APPELLANT.

306 N.W.2d 858

Filed June 12, 1981. No. 43676.

James L. Quinlan of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellant.

Pamela A. Mattson for appellee Hanlon. Thomas J. Jenkins of Gast and Kielty for appellee Boden.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The claimant filed a claim for unemployment benefits which was allowed by the Deputy Commissioner of Labor. The employer appealed. The decision was reversed by an appeal tribunal. The Commissioner of Labor appealed to the District Court. The District Court reversed the decision of the appeal tribunal and reinstated the award of the Deputy Commissioner of Labor and the employer has appealed to this court.

The claimant, John C. Boden, is a professional musician who completed his third season as a principal horn player with the Omaha Symphony on May 15, 1979. During the 1978-79 season Boden had been working under the terms of a master agreement negotiated between his employer, Omaha Symphony Association, and his union, the Omaha Musicians' Association, and under an individual musician's contract between the Omaha Symphony, Inc., and Boden. Under Boden's contract he agreed to play 180 "services" during the period of time between September 1978 and May 15, 1979. A salary of $7,800 was payable in 16 equal installments on the 15th and final day of each month during the "season." Payment for additional "services" or for solo performances, or other items affected by the master agreement, were payable in addition on the pay dates following the performance. A "service" is a concert or rehearsal as defined in the master agreement.

Prior to May 1, 1979, Boden and the symphony entered into a new contract for the period from September 10,

1979, through May 18, 1980, the conditions of which were the same as the 1978-79 contract except that the total salary was $8,000.

On May 15, 1979, Boden's contract for the 1978-79 symphony season was completed and he collected his last paycheck on that date. Boden had two private recording sessions as an independent contractor immediately after May 15th. Finding no further work, he filed his claim for unemployment benefits on or about May 20, 1979. He also contacted Opera/Omaha and listed himself at the Musicians' hiring hall and made other attempts to obtain employment. From June 11, 1979, through July 15, 1979, Boden was employed in connection with a music festival in Peru, Nebraska, and that period of time is not involved here.

On June 11, 1979, the Deputy Commissioner of Labor determined that Boden was separated from his employment with the Omaha Symphony Association on May 15, 1979, when the contract of employment was fulfilled by both parties, and that the fulfillment placed the claimant in an unemployed status as defined by Neb. Rev. Stat. § 48-602(18) (Reissue 1978) and he was therefore entitled to claim benefits.

The symphony association appealed the deputy's determination to the Nebraska Appeal Tribunal. The appeal tribunal found that the contract of employment covered a period of months, ending May 15, 1979, and that salary payments were made only during the contract period. The tribunal determined that compensation was, in fact, an annual salary and that the contract of employment was for an annual sum and that compensation paid during the contract period was payable with respect to the entire year and not with respect to the actual days of service or actual months for concert season performances. The tribunal therefore determined that Boden had no weeks of unemployment during the 52-week period from the beginning of performance of services under the contract and was therefore ineligible for any unemployment insurance benefits.

The Commissioner of Labor filed a petition for review in the District Court. After hearing, the District Court specifically found that Boden was unemployed as required by Neb. Rev. Stat. § 48-627 (Reissue 1978) in that his contract of employment with the Omaha Symphony Association expired at the conclusion of the last scheduled service for the Omaha Symphony Association. The District Court determined that the contract between the claimant and the Omaha Symphony Association was a seasonal contract and not an annual contract as evidenced by the fact that the symphony association did not control the employee in any manner after the season was completed. The District Court therefore reversed the findings and decision of the appeal tribunal and reinstated the determination of the Deputy Commissioner of Labor and awarded the claimant all benefits that he was entitled to under the Employment Security Law. The Omaha Symphony Association has appealed.

The position of the symphony association on appeal is that the salary payable for the symphony season was actually an annual salary payable with respect to each week of the year and that it should be treated as if it were a salary for teaching or a salary for a professional athlete.

Section 48-602 contains the basic definitions of the Employment Security Law, and subsection (18) of that section provides: "Week of unemployment with respect to any individual shall mean any week during which he performs less than full-time work and the wages payable to him with respect to such week are less than his weekly benefit amount."

Under the contracts involved in this case the contract period extended from a specific date in September of one year to a specific date in May of the next year. The master agreement refers to the "season" and requires that payment for the number of guaranteed services will be made in 16 equal installments, relative to the individual musician's guarantee, on the 15th and final day of each month during the "recognized season." Neither

the master agreement nor the individual musician's contract places any obligations upon any party as to employment or services or the payment of wages or salary during the "off season." The master agreement, however, does require written notice from either party to renew or terminate an individual musician's contract "for the coming season" at a time prior to the end of the current contract period. Under the contracts here no wages were payable to Boden "with respect to" any week in the off season, unless his salary can be said to be on an annual basis but payable over a shorter period of time. The symphony association contends that Boden was actually employed on an annual salary basis and should be considered to be in the same class as teachers or professional athletes. The major problem with that argument is that teachers and professional athletes are specifically disqualified for benefits by statute.

Neb. Rev. Stat. § 48-628 (Reissue 1978) provides that an individual shall be disqualified for benefits for any week of unemployment under various specified circumstances. Subsection (h) disqualifies a teacher from benefits for any week of unemployment between two successive academic years, if there is a contract or a reasonable assurance that the teacher will perform services for any educational institution in the next academic year.

Subsection (i) disqualifies a professional athlete for any week of unemployment between two successive sports seasons if such individual performed such services in the first of such seasons and there is a reasonable assurance that such individual will perform such services in the later of such seasons. It should be noted also that subsection (g) disqualifies an individual for any week of unemployment if such individual is a student.

While there may be similarities between teachers, professional athletes, and professional symphony musicians, there can be no doubt that the language of § 48-628(h) and (i) is clearly and precisely limited to employees of educational institutions and professional athletes. The

Legislature may be free to extend the disqualifications to other classes of employees but this court cannot do so without rewriting the statute.

The symphony association urges this court to construe § 48-628 liberally in order to deny unemployment benefits to Boden. It is generally held that the beneficent provisions of an unemployment compensation act should receive a liberal construction in favor of those claiming benefits under it. See 81 C.J.S. *Social Security* § 159 (1977). This court has also held that the Employment Security Law is to be liberally construed in order to accomplish its beneficent purposes. See, *Hunter v. Miller*, 148 Neb. 402, 27 N.W.2d 638 (1947); *Parson v. Chizek*, 201 Neb. 754, 272 N.W.2d 48 (1978). These beneficent purposes are not served by a strained construction of the statutes which will deny an unemployed worker the benefits of the act.

The judgment of the District Court was correct and is affirmed.

AFFIRMED