**Kim R. SALAMON, Relator,**

v.

**TIME SHARE COMPUTER SYSTEMS, INC., Respondent,**

**and**

**Commissioner of Economic Security, Respondent.**

**No. CX–83–1249.**

Court of Appeals of Minnesota.

Dec. 21, 1983.

Kim R. Salamon, pro se.

Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Claimant Kim Salamon appealed a decision by the Commissioner of the Department of Economic Security denying him unemployment compensation benefits. Salamon's claim was approved by the claims deputy. The appeals tribunal reversed, finding a voluntary termination without good cause attributable to the employer. Salamon appealed further to the commissioner who adopted the findings and decision of the appeals tribunal. We granted certiorari. This court concludes that the employer, Time Share Computer Systems, Inc., failed to meet the burden of proving voluntary termination. Accordingly; we reverse.

In July 1982, Salamon was hired by Data Systems. He worked a regular eight hour shift, spending about half his time working as a computer operator, and half receiving training in computer programing.

In September 1982, Data Systems became Time Share Computer Systems. As a Time Share employee, Salamon's responsibilities and work schedule changed. The computer programing training ceased. Salamon's duties were restricted solely to computer operation. In addition, Time Share switched Salamon from a fixed schedule to flexible hours. Instead of working from 1:00 p.m. to 9:00 p.m., he began working from 4:00 p.m. until his work was completed each night. His workload increased when a night operator resigned and was not replaced.

Salamon's work hours fluctuated widely. Some nights he worked as few as four or five hours. During peak periods at the beginning and end of each month he

worked up to 12 or 13 hours a night. Even working these hours he could not complete his nightly work during peak periods.

Salamon received overtime pay, but was dissatisfied with his fluctuating schedule and long hours during peak periods.

In November 1982, Salamon met with Jack Duggisberg, Time Share's president. Duggisberg informed Salamon that it might be two or three years before Time Share could train him as a computer programer. He suggested Salamon look elsewhere if he wanted to be a programer. Duggisberg asked Salamon not to quit until he found another job and had trained a successor. Salamon agreed. He did not submit a resignation.

In January 1983, Duggisberg questioned Salamon about his failure to complete assigned work on time. Salamon told Duggisberg that the peak period work was excessive for one person and that he refused to work the approximately 16 hours it would take to finish each night's work. He told Duggisberg that he would work the 10 to 12 hour shifts he had been working. Anything he could not complete in that period he would carry over to the next day's work. Duggisberg informed Salamon that if the work was not completed nightly he would be replaced.

Salamon continued to work for Time Share. He never refused to appear for scheduled work. When the company hired another computer operator in late February 1983, Salamon showed her around and worked with her.

On March 1, 1983, Duggisberg informed Salamon that the new employee would replace him and that he need not come to work anymore. Salamon applied for unemployment compensation benefits.

■■ Unemployment compensation benefits can be denied to a worker who has terminated his employment voluntarily. *Marz v. Department of Employment Services*, 256 N.W.2d 287, 289 (Minn.1977). The standard to be used by a reviewing court is whether the commissioner's findings are reasonably sustained by the evidence, are affected by an error of law, or are arbitrary and capricious. *Lumpkin v. North Central Airlines*, 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973).

Our review of the record convinces us that the evidence does not support the commissioner's finding of voluntary termination. The commissioner's office based its denial of benefits on Salamon's refusal to work the overtime necessary to complete his nightly work during peak periods. It found that this refusal constituted a free will choice to terminate employment. See *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958).

■■ The evidence contradicts this conclusion and compels reversal. The record shows that Time Share, not Salamon, initiated Salamon's termination. In November 1982, Time Share persuaded Salamon not to resign until he found another job and trained his successor. Later, Time Share hired a replacement and terminated Salamon. Salamon never resigned, and it is undisputed that he continued to appear for scheduled work until Time Share informed him that his services were no longer required. See, *Zepp v. Arthur Treacher Fish and Chips*, 272 N.W.2d 262 (Minn. 1978).

■■ Given these facts, we find that the commissioner's office erred in finding that Time Share met its burden of proving that Salamon's termination was voluntary. Since we find that the termination was involuntary, we need not decide whether changes in Salamon's responsibilities and work schedule were sufficient good cause for voluntary termination.

Reversed.