HAVEN HOME INCORPORATED, DOING BUSINESS AS HAVEN HOME OF KENESAW, APPELLANT, V. DEPARTMENT OF PUBLIC WELFARE OF THE STATE OF NEBRASKA ET AL., APPELLEES.

346 N.W.2d 225

Filed March 9, 1984. No. 83-025.

Wright Rembolt Milligan & Berger, for appellant.

Paul L. Douglas, Attorney General, and Royce N. Harper, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from a judgment of the district court for Lancaster County which affirmed the determination of the Nebraska Department of Public Welfare (DPW) that appellant, Haven Home Incorporated, doing business as Haven Home of Kenesaw, was overpaid $50,948.59 in medicaid reimbursements by the DPW for fiscal year 1979. We affirm.

For purposes of this opinion we are concerned only with applicable state and federal law in effect for 1979.

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (Supp. IV 1965-68), and regulations promulgated thereunder, created the medical assist-

ance program known as Medicaid. Appellee John E. Knight is the past director of the DPW, the state agency designated to administer the medicaid program in Nebraska. The federal-state medicaid program requires states wishing to participate in the program to submit a state plan which meets the conditions specified in the Social Security Act and in the applicable federal regulations. In 1976 Nebraska adopted the Nebraska Medical Assistance Program (Plan). The Plan is a comprehensive set of regulations setting forth how the state and federal funds will be distributed to medical care providers. The federal government approved Nebraska's plan in 1976.

Interim payments to qualified medical care providers are made pursuant to the Plan, during any given year, based upon estimated reasonable charges. At the end of the year the DPW audits the financial records of each health care provider, and retroactive adjustments are made through refund or additional payment to bring the amounts paid into balance with amounts due under the Plan.

Haven Home is a licensed intermediate care facility located in Kenesaw, Nebraska. During 1979, Haven Home operated a service for mentally retarded patients, some of whom were qualified medicaid recipients. (This service will be referred to as ICF-MR.) In retroactively calculating Haven Home's reimbursement rate for 1979, the finance and accounting division of the DPW determined that Haven Home had been paid $50,948.59 in excess reimbursements. Haven Home appeals the district court's order, which affirmed the DPW's determination of overpayment.

Haven Home first argues that the formula used to reduce the 1979 medicaid reimbursement is invalid as a matter of law because it was never promulgated in accordance with the requirements of state and federal law. In support of their contention Haven Home argues that the formula used to com-

pute the retroactive adjustment, specifically § 1400(b) of the Nebraska Public Welfare Manual, IX-6000, Supp. A (Rev. July 1, 1976), was never promulgated, approved, or filed in accordance with the provisions of the Administrative Procedures Act (Act), Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1976), nor was § 1400(b) published in conformity with 42 C.F.R. § 447.306(c) (1979), which states in part: "If proposed rates or rate formulas provide for retroactive downward adjustments, the [state], in publishing the proposed rates or rate formulas . . . must state the deficiencies under which an adjustment would be made and the amount or percentage rate of the adjustment."

Section 1400(b) of the Plan states in part: "In computing the provider's total allowable cost apportionment, total inpatient days shall be the greater of the actual occupancy or 85% of total licensed bed days. For new construction (entire facility or bed additions) total inpatient days shall be the greater of actual occupancy or 50% of total licensed bed days available due to new construction during the first year of operation, commencing with the first day patients are admitted for care. Total inpatient days shall be days on which the patient occupies the bed at midnight, the bed is held for hospital or convalescent leave." Neb. Pub. Welfare Man., IX-6000, Supp. A, § 1400(b) at 4.

Haven Home concedes that § 1400(b), as set forth above, has been duly promulgated in accordance with the Act. It contends, however, that because neither an algebraic computation nor a clear explanation of the application of the section can be found in the Plan, it does not meet the state or federal publication requirements.

There is no doubt that § 1400(b) of the Plan is a rule or regulation that must be properly promulgated as provided in the Act. See *State ex rel. Nebraska Nurses Assn. v. State Board of Nursing*, 205 Neb. 792, 290 N.W.2d 453 (1980). The issue then be-

comes, To what degree of specificity must a rule or regulation be set forth in order to be valid?

The Nebraska Plan is a complex and comprehensive set of rules and regulations dealing with the specialized area of health care and health care reimbursement under state and federal law. Any specific provision of the Plan must be read in context with the entire Plan and with cognizance of to whom that provision applies. Limitations on reimbursement for allowable costs are set out in § 1400 of the Plan, § 1400(b) being the minimum occupancy requirement of 50 percent for new construction and 85 percent for other facilities. There is no evidence in the record which reflects that Haven Home did not understand the method in which § 1400(b) applied. Section 1400(b) is outlined in sufficient detail as to allow interested parties to decide whether to seek more information on the section's particular aspects.

The regulation is not so obscure that a reasonably competent administrator could not determine both the total bed capacity and the occupancy rate. Through the use of simple multiplication and division, with only three variables, total reimbursement can be easily calculated. The regulation is not defective.

Appellant next contends that it was denied equal protection of the law because § 1400(b) creates an improper, irrebuttable presumption that nursing homes that are not at least 85-percent occupied (or 50-percent in the case of new construction) are inefficient and uneconomical.

Generally, an irrebuttable presumption may not be used if the presumption is not necessarily or universally true and the state has reasonable alternative means for making the decision. *Vlandis v. Kline*, 412 U.S. 441, 93 S. Ct. 2230, 37 L. Ed. 2d 63 (1973). Social welfare legislation and regulation, however, is treated differently by the courts. Classifications are upheld where no constitutionally pro-

tected right of status is significantly impaired, and where the classification bears a rational relationship to a legitimate legislative goal. In such cases classifications to avoid the administrative difficulty of individual determinations in every case are proper, even though the classifications adopted are neither necessarily nor universally true. *Weinberger v. Salfi*, 422 U.S. 749, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975); *Richardson v. Belcher*, 404 U.S. 78, 92 S. Ct. 254, 30 L. Ed. 2d 231 (1971); *Flemming v. Nestor*, 363 U.S. 603, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960).

The equal protection test, as applied to the instant case, requires only that in establishing the reimbursement rates the DPW's classification have some "reasonable basis." It is not unconsitutional merely because the classification is not made with mathematical nicety or because in practice it results in some inequity. *Dandridge v. Williams*, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970). A legislative classification must be sustained if it is rationally related to a legitimate government interest. *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S. Ct. 2821, 37 L. Ed. 2d 782 (1973).

A presumption of validity attaches to the actions of administrative agencies. While the presumption is rebuttable, the burden of proof rests with the party challenging the agency's action. *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 388 (5th Cir. 1980).

In the guise of insisting that § 1400(b) creates an impermissible, irrebuttable presumption, the appellant is trying to shift the burden of proof to the DPW to justify the decision made. The ultimate details of the reimbursement plan are within the authority of the DPW. This court may not substitute its judgment for that of the DPW in determining which method or methods are preferable in reimbursements for ICF-MR services. The DPW is not obligated to justify why it arrived at an 85-percent mini-

mum occupancy requirement instead of one set at 80 percent or 90 percent.

Haven Home concedes that the State has a legitimate interest in maintaining efficiently and economically operated nursing homes. It then has the burden of proof to show that the minimum occupancy requirement of § 1400(b) is not rationally related to that interest. The burden of proof is not met, however, merely by maintaining that "things could have been done differently." Disregarding the assertions made by counsel for Haven Home, the record is conspicuously absent of any evidence that the minimum occupancy requirement is not rationally related to the State's interest. The reason for the occupancy requirement is obvious. Certain fixed expenses continue, irrespective of the number of occupants. If there is an unusually low occupancy rate, the private patients and the State (on behalf of the welfare recipients) pay a disproportionate share of expenses.

Appellant next contends that the Nebraska reimbursement rate structure violates the supremacy clause of article VI of the U.S. Constitution, in that § 1400(b) deprives it of medicaid reimbursement payments to which it was entitled under the standards set by Title XIX of the Social Security Act and the regulations promulgated thereunder. Specifically, Haven Home alleges that the Nebraska Plan violates 42 U.S.C. § 1396a(a)(13)(E) (Supp. III 1973), and 42 C.F.R. § 447.302(b) (1979), in that the Plan fails to adequately reimburse it for allowable cost in operating an ICF-MR unit.

A state is not obligated to participate in the medicaid program. However, once it has voluntarily elected to participate in the program, the state must comply with federal standards. *Alabama Nursing Home Ass'n v. Harris, supra; Country Club Home, Inc. v. Harder,* 228 Kan. 756, 620 P.2d 1140 (1980).

In 1972 Congress amended Title XIX of the Social Security Act to require that a state plan for long-

term health care assistance provide "for payment of the skilled nursing facility and intermediate care facility services provided under the plan on a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary [of HEW]." Social Security Amendments of 1972, Pub. L. No. 92-603, § 249(a), 86 Stat. 1329, 1426 (1972) (codified as amended at 42 U.S.C. § 1396a(a)(13)(E) (Supp. III 1973)).

Title 42 C.F.R. § 447.302(b) (1979) provides that "[p]ayment rates must not be set lower than rates that the [state] reasonably finds to be adequate to reimburse in full the actual allowable costs of a facility that is economically and efficiently operated."

Title 42 U.S.C. § 1396a(a)(30) (Supp. IV 1965-68) requires the state "to assure that payments . . . are not in excess of reasonable charges consistent with efficiency, economy, and quality of care."

Congress intended that state authorities, in developing methodologies for reasonable cost-related reimbursement, have great flexibility in the areas of cost-finding and rate-setting. The legislative history indicates that states are to be free to experiment with methods and standards for payment that would be simpler and less expensive than the complex medicare reasonable-cost formula. See S. Rep. No. 1230, 92d Cong., 2d Sess. 287 (1972).

Under Title XIX the state is not required to reimburse a provider for every allowable cost. *Minn. Ass'n of Health Care Facilities, etc.*, 602 F.2d 150 (8th Cir. 1979); *Unicare Health Facilities, Inc. v. Miller*, 481 F. Supp. 496 (N.D. Ill. 1979).

We cannot say as a matter of law that the use of the 85-percent (50-percent for new construction) minimum occupancy requirement of § 1400(b) results in unreasonable rates for reimbursement which are not in accordance with federal law and

regulations. As noted previously, states are allowed great flexibility to experiment in developing methods of determining reasonable cost-related rates. This court, absent good cause, may not substitute its decision for that of the DPW. In the recent case of *Mississippi Hosp. Ass'n, Inc. v. Heckler*, 701 F.2d 511 (5th Cir. 1983), a minimum occupancy requirement not unlike § 1400(b) was upheld as not being violative of the federal law.

We also note that providers of health care services such as Haven Home are not required to participate in Nebraska's medicaid program. In application, the Plan is nothing more than a unilateral contract between the DPW and the participating health care provider. As such, those providers who do wish to participate are bound by reimbursement provisions of the Plan, as long as those provisions are not arbitrary or capricious or violative of federal law. The medicaid program is not designed to protect health care providers from the consequences of their business decisions or from business risks.

Viewing the record as a whole, we are satisfied that the minimum occupancy requirement of § 1400(b) was properly promulgated under both federal and state law and that it is not violative of the equal protection or supremacy clause of the U.S. Constitution.

The judgment of the district court is correct, and it is affirmed.

AFFIRMED.