HENDRICKS & LAMERS, LTD., Relator,

v.

Paulette VADNAIS, Department of Jobs and Training, Respondents.

No. C6–86–307.

Court of Appeals of Minnesota.

June 24, 1986.

John B. Van De North, Jr., Gregory J. Stenmoe, Briggs & Morgan, Minneapolis, for Hendricks & Lamers, Ltd.

Paulette Vadnais, pro se.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for Department of Jobs and Training.

Considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Relator Hendricks & Lamers, Ltd. has requested review of a determination that Paulette Vadnais was involuntarily discharged from her job with the firm. We affirm.

## FACTS

Respondent Paulette Vadnais was hired as an accountant-trainee in July 1985 by the relator accounting firm on the condition that she enroll in a two year accounting course in the fall.

A month later, the employer's chief executive officer met with Vadnais, pointed out that she appeared bored and dissatisfied at work, and suggested that she think about whether she really wanted to pursue a career in accounting.

That same day, the employer's new personnel policy was finalized, providing, in part for "Voluntary Termination":

1. The employee will inform a partner at least two weeks prior to departure of his leaving. This notice should be in writing stipulating a reason for leaving and the last date of employment.

 \* \* \* \* \* \*

3. The departing employee will be allowed to use the full resources of the firm during that two-week period to find other employment. This will include a desk, telephone, use of the secretary for typing of resumes and letter, firm stationery, envelopes, stamps (within reason), copy machine and any other facilities that will be of assistance.

4. The employee will be paid for a minimum of two weeks while seeking employment.

Another section of the personnel policy provided for involuntary termination if an employee "[sought] employment without first informing a partner of the desire to seek employment in violation of the policy of voluntary termination."

At a staff meeting on August 16, Vadnais specifically asked whether a notification that an employee was looking for work was the same as a notice of resignation. Both the CEO and another partner replied "no."

After several days had passed, Vadnais again met with the CEO and informed him that she had changed her mind about be-

coming an accountant and had decided to begin looking for another job. Vadnais had also decided not to enroll in the accounting course, although she did not inform the CEO of this fact. The CEO told Vadnais that she could take time off from work for job interviews and could call upon the secretarial staff to assist her in her job search. Vadnais never gave her employer written notice of resignation, nor did she specify a resignation date.

At the end of August, the CEO advised Vadnais that the firm could not keep her on indefinitely while she looked for other work. The CEO informed her that she could work until September 30, but that if she received a job offer prior to that time, she should feel free to quit without advance notice. Vadnais, however, said that she would give at least two weeks notice when she intended to resign.

On September 9, 1985, Vadnais asked her employer if she could remain working there until October 31, 1985. Her request was denied, and Vadnais' last day of employment was September 30, 1985. At that time, she had not yet found other work.

Vadnais applied for unemployment compensation, and a Commissioner's representative determined that she had been involuntarily separated from her employment and was entitled to benefits.

## ISSUE

Was Vadnais discharged from her position with the employer, or did she resign?

## ANALYSIS

■ An individual who voluntarily resigns from a job is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(1) (1984). Here, the Commissioner's representative determined that Vadnais was discharged. Since the question whether an employee has quit or was discharged is one of fact, *Midland Electric, Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn.Ct.App.1985), this court's review is limited to determinating whether there is evidence reasonably tend-

ing to sustain the Commissioner's findings; if so, they will not be disturbed. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

■ The record reveals that when Vadnais informed the CEO of her intent to begin looking for a job, she did not thereby give notice of resignation. Rather, she testified without contradiction that she had specifically asked at a staff meeting whether notice to a superior of a job search was the same as giving a resignation notice, and two partners had responded "no." As the Commissioner's representative noted, Vadnais never gave written notice of resignation, nor did she ever specify a date when she intended to resign. To the contrary, she told the CEO that she would give two weeks notice when she found another position.

These facts support the decision by the Commissioner's representative that Vadnais was involuntarily terminated from her accountant-trainee position. The termination was not a matter of her free-will or acquiescence; it was the employer's decision that she should leave after September 30 which was the "critical impetus" for, the "initiation of", and the "ultimate and final act" that caused the unemployment. *See Armar Corp. v. Malinski*, 362 N.W.2d 10, 12 (Minn.Ct.App.1985); *Salamon v. Time Share Computer Systems, Inc.*, 341 N.W.2d 300, 302 (Minn.Ct.App.1983); *Ramirez v. Metro Waste Control Commission*, 340 N.W.2d 355, 357 (Minn.Ct.App. 1983). Vadnais never indicated when she was going to resign, or even that she was going to resign at all; rather, she continued to appear for work until she was discharged by the employer.

The terms of the employer's personnel policy required that Vadnais either notify her superiors of her job search or be involuntarily terminated if she failed to do so. In the absence of such a policy, it is unlikely that Vadnais would have notified her superiors of her job search. It would be unfair to penalize Vadnais for "voluntarily" quitting when she was merely complying with her employer's policy by inform-

ing her superiors that she was looking for another position.

██ The employer testified that Vadnais could not do the work expected of her without further training, and in its brief characterizes Vadnais as a "lame duck employee," thereby suggesting that it had good cause to terminate her. However, good cause to terminate an employee is a different standard than that used in unemployment compensation cases. As the supreme court has noted, "[t]he issue * * * is not whether [the employee] should have been terminated, but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well." *Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142, 143 (Minn.1984).

██ The employer's argument that Vadnais was a lame duck employee and failed to pursue further training might be construed as implying that her termination constituted a constructive voluntary quit. This doctrine, however, is not favored by the courts. *See Jansen v. Peoples Electric Co., Inc.,* 317 N.W.2d 879 (Minn.1982); *Commissioner of the Department of Economic Security v. City of Duluth,* 297 N.W.2d 239 (Minn.1980). The legislature has also limited this doctrine. *See* Minn. Stat. § 268.09, subd. 1(1) (1984). In light of the disfavor with which this doctrine is viewed, and since the employer failed to specifically raise the issue, we do not find the doctrine applicable in this instance.

The statute provides for denial of unemployment compensation benefits when an employee has been discharged for misconduct. Minn.Stat. § 268.09, subd. 1(2). In its brief, the employer notes Vadnais' failure to pursue further training, but fails to tie this fact to an allegation of misconduct. We therefore decline to consider the issue.

The employer relies upon another portion of section 268.09, which provides:

An individual shall not be disqualified under clauses (1) and (2) of this subdivision [the voluntary quit and misconduct provisions] under any of the following conditions:

\* \* \* \* \* \*

(e) The individual is terminated by his employer because he gave notice of intention to terminate employment within 30 days. This exception shall be effective only through the calendar week which includes the date of intended termination, provided that this exception shall not result in the payment of benefits for any week for which he receives his normal wage or salary which is equal to or greater than his weekly benefit amount;

Minn.Stat. § 268.09, subd. 1(2). In *Kalvar Datacorp v. Rynerson,* 374 N.W.2d 828, 830 (Minn.Ct.App.1985), this court discussed the above provision and concluded that an employee who gives notice of intention to terminate employment which is effective more than 30 days from the date of the notice must be considered to have voluntarily quit, and is disqualified from receiving benefits. The employer argues that the reasoning of *Kalvar* is also applicable here.

This argument is based upon the premise that Vadnais actually gave her employer notice that she intended to terminate her employment. As discussed above, Vadnais never gave such notice; therefore, *Kalvar* and the above statute are inapplicable.

### DECISION

The decision of the Commissioner's representative is affirmed.

Affirmed.