**BARREN RIVER MENTAL HEALTH—
MENTAL RETARDATION BOARD,
INC., Appellant,**

v.

**Mary L. BAILEY, Appellee.**

No. 89–CA–31–MR.

Court of Appeals of Kentucky.

Feb. 9, 1990.

David F. Broderick, Elizabeth Y. Downing, John H. McCracken, Cole, Broderick, Minton, Moore & Thornton, Bowling Green, for appellant.

Mark D. Esterle, Cumberland Trace Legal Services, Bowling Green, for appellee.

Before EMBERTON, HAYES and WILHOIT, JJ.

HAYES, Judge:

The Barren River Mental Health—Mental Retardation Board, Inc. [Barren River] appeals from a decision of the Warren Circuit Court, reversing a decision of the Kentucky Unemployment Insurance Commission [the commission], which had denied unemployment benefits to Mary L. Bailey. We affirm.

The testimony before the commission was as follows. Mary had worked full-time for Barren River for 7½ years, supervising mentally retarded individuals in their production work and training. On April 18, 1988, her supervisor, Ron Ramsey, handed her a memo providing that because of insurance requirements, all employees were now required to have a driver's license and have a clean driving record for seven years. The memo provided that any employee who could not comply would be terminated with two weeks notice. The following day, on April 19th, Mary was absent with permission in order to go to Nashville. When she returned on the 20th, Ramsey presented another memo dated April 19th, terminating her employment effective April 29th.

During the four hours that Mary worked on the 20th, her trainees were very upset about their instructor leaving them. They told her that she was "a fool for being there" and "they can't make you stay those two weeks." The trauma of this resulted in shortness of breath and an upset stomach, and she decided to quit at that time instead of waiting until the 29th. Because Ramsey was not there, Mary told Eddie Phillips, who she believed to be in charge in his absence, that she was ill and could no longer take her client's reactions to her termination. Phillips agreed, and Mary immediately filled out an exit interview and a Kentucky Retirement form. These forms were given to another manager, Kathy Grimes, to give to the personnel director. Phillips assured Mary that he would notify Ramsey of her early departure.

Phillips, too, was terminated because of the new requirements, effective April 29th. However, Ramsey told him not to bother coming in anymore after the 21st.

Ron Ramsey testified that both Phillips and Mary had originally agreed to finish

out their two weeks. When Phillips left on the 22nd, however, Ramsey did not protest his claim for unemployment benefits, and did not seek a personnel determination that his termination had been "voluntary."

The commission referee found that Mary had voluntarily quit without good cause attributable to her employment. The commission summarily affirmed. The trial court agreed with the referee's findings of fact, but reversed based on the decisions of other jurisdictions. This appeal followed.

■ KRS 341.370(1)(c) disqualifies a petitioner from receiving unemployment benefits if he has left his employment "voluntarily without good cause attributed to the employment." "Good cause" exists only when the worker is faced with circumstances so compelling as to leave no reasonable alternative but loss of employment. *H & S Hardware v. Cecil*, Ky.App., 655 S.W.2d 38 (1983). Both parties concede that the circumstances of this case create an issue of first impression.

■ In *Johnston v. Florida Department of Commerce*, 340 So.2d 1229 (Fla. App.1976), the Florida court construed its unemployment statute to mean that where an employee has been notified that his employment is being terminated as of a certain date, the employee has not voluntarily left his employment without good cause attributable to his employment simply because he chose not to work all or part of the period between the notification and the date of termination. The employee, however, would not be entitled to benefits covering the period between his last day of work and the official date of his involuntary termination. In *Carlson v. Job Service North Dakota*, 391 N.W.2d 643 (N.D. 1986), the petitioner discovered a memo on the desk of one of her supervisors, directing the initiation of her removal from her secretarial position. Being upset, she chose to resign before her employment would have officially terminated. The North Dakota court held that she was entitled to benefits from the date she would have officially been discharged. It was insignificant that this official date had not yet been set.

Finally, in *Poteat v. Employment Sec. Com'n of N.C.*, 319 N.C. 201, 353 S.E.2d 219 (1987), a truck driver was informed of his impending termination, and chose to quit prematurely and apply for benefits. The employee was nevertheless held to be qualified to receive benefits as of the date of his employer's designated date of discharge.

In the case before us, it must first be emphasized that although the claimant has the burden to prove entitlement to benefits, the conditions of disqualification under the statute must be strictly construed. *Broadway & Fourth Ave. Realty Co. v. Allen*, Ky., 365 S.W.2d 302 (1962). *Brown Hotel Co. v. Edwards*, Ky., 365 S.W.2d 299 (1962). KRS 341.350(8). An administrative decision which lacks substantial evidence is considered arbitrary and must be set aside. *Williams v. Cumberland Valley National Bank*, Ky.App., 569 S.W.2d 711 (1978). In gauging substantial evidence, it is not enough that there be some evidence to support the decision or that there be a persuasive scrap of evidence. "The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 308 (1972). Here this Court, like the trial court, has no serious disagreement with the factual findings of the referee as affirmed by the commission. However, we cannot agree that the facts as presented constituted a voluntary termination. Mary's departure had already been decided—it was inevitable. Her act of leaving a few days early did not result in Barren River's decision to discharge her. *Carlson, supra.* However, her compensation begins from the date her employer terminated her, April 29th, and not from the date she quit, April 20th.

The judgment of the Warren Circuit Court is affirmed.

All concur.