REQUESTED BY: Alvin Abramson, Director, Nebraska Department of Motor Vehicles
1. Under the current statutes, can the Nebraska Department of Motor Vehicles (Department) require all applicants for commercial and noncommercial original, renewal, replacement or duplicate licenses to pass a Problem Driver Pointer System (PDPS) records check before issuing a license?
2. If the answer to question number one is yes, and the applicant's PDPS check shows that the applicant is suspended or revoked in another state, then can the Department refuse to issue the license until the suspension or revocation is cleared under Neb. Rev. Stat. § 60-486?
3. If the answer to questions number one and number two is yes, should the Department apply the same procedures to employment driving permits and medical hardship permits?
Yes. The Department may require all commercial and noncommercial original, replacement, or duplicate license applicants to pass a PDPS records check before issuing such license to the applicant.
Yes. If a PDPS check shows that such applicant has a license currently under suspension or revoked in another state, the Department is required by Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.) to deny a valid Nebraska operator's license to such applicant.
Yes. The Department may be authorized to perform PDPS checks on all applicants for employee driving permits and medical hardship permits as well. The Department, however, must nonetheless make such determinations based on sound and reasonable policy considerations and the special circumstances surrounding such permits.
DISCUSSION
The National Driver Register Act of 1982, Pub.L. No. 97-364, called for the establishment of an improved National Driver Register (NDR) to better facilitate the exchange of driving record information between the states. Participation in the new NDR system, or Problem Driver Pointer System (PDPS), requires states to conform to a number of federal regulations. See 23 CFR § 1325, 1327.
In order to participate in the PDPS, States must comply with four categories of conditions: (1) reporting requirements (the State must transmit certain specified "pointer records" to the NDR), (2) the State must request information from the NDR for "each first-time, non-minimum age driver license applicant before issuing a license to the applicant", and may request NDR information "for other driver licensing and driver improvement purposes", (3) the State must establish necessary procedures and forms to accept requests for NDR file checks from authorized users of the system, and (4) the State must have the necessary computer system and procedures to respond to NDR information requests.23 CFR § 1327.5 (emphasis added).
A state administrative agency has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the statute. Nebraska Ass'n of Public Employees, Games and Parks Chapter v. Game and Parks Commission, 220 Neb. 883, ___, 374 N.W.2d 46, ___ (1985).
 Neb. Rev. Stat. § 60-4,153 (1992 Cum.Supp.) provides that, Prior to the issuance of any original or renewal commercial driver's license or the reissuance of any commercial driver's license with a change of any classification, endorsement, or restrictions, the Department of Motor Vehicles shall: . . . (3) Contact the National Driver Register to determine if the applicant (a) has been disqualified from operating any motor vehicle, (b) has had an operator's license suspended, revoked, or canceled for cause in the three-year period ending on the date of application, or (c) has been convicted of operation of a motor vehicle while under the influence of or while impaired by alcohol or a controlled substance, a traffic violation arising in connection with a fatal traffic accident, reckless driving, racing on the highways, failure to render aid or provide identification when involved in an accident which resulted in a fatality or personal injury, or perjury or the knowledgeable making of a false affidavit or statement to officials in connection with activities governed by a law, rule, or regulation related to the operation of a motor vehicle.
Neb. Rev. Stat. § 60-4,153 (1992 Cum.Supp.) requires the Department of Motor Vehicles to do a PDPS check of an applicant for a commercial driver's license — original, renewal or reissue. There is no comparably expressed statutory authority with respect to noncommercial driver's license applications. However, Neb. Rev. Stat. §60-486 (1992 Cum.Supp.) provides, in part, that "no person shall be licensed to operate a motor vehicle by the State of Nebraska if such person has an operator's license currently under suspension or revocation in any other State or jurisdiction in the United States".
In addition, under the broad statutory authority provided in Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.), the Department of Motor Vehicles may develop rules and regulations within the scope of its statutory authority. Such rules must be promulgated to accomplish the statute's intended purpose and may not exceed that purpose.
DISCUSSION
The Department of Motor Vehicles possesses broad statutory authority to refuse to issue driver's licenses to persons who have licenses that are currently under suspension or revocation in another state. See Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.). In addition, the Department may promulgate rules or regulations within the scope of the statutory authority thus granted.
To be valid, a rule or regulation must be consistent with the statute under which the rule or regulation is promulgated. Dodge County on Behalf of Memorial Hospital of Dodge County v. Department of Health of State of Nebraska,218 Neb. 346, ___, 355 N.W.2d 775, ___ (1984).
The Department currently observes the practice of doing NDR checks on first-time applicants for noncommercial driver's licenses. This type of rule of informal practice appears to be clearly within the Department's statutory purpose of issuing driver's licenses to those whose licenses are not currently suspended or revoked in another state or jurisdiction. See Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.).
The language of Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.) is facially very broad, and would therefore reasonably seem to include any driver's license issued by the Department, whether commercial or noncommercial, new, renewal, replacement or reissue. Section 60-486 simply says that "no person shall be licensed. . . ." Such language may reasonably be construed to include any license given or possessed, without reference to when the person was licensed, how many times the State has given such person a license before, or other related factors. It simply says that a person may not have a license to operate a motor vehicle in Nebraska if he or she currently has a driver's license that is under suspension or revocation in another state.
It would, therefore, appear that the Department may, consistent with the statutory purpose expressed in Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.), require every applicant for a noncommercial driver's license to pass a NDR check prior to being issued such a license.
The policy of the Legislature of Nebraska in §60-486 is to keep persons under suspension or revocation in other states or jurisdictions from obtaining or possessing a license to drive in this state. There are no exceptions to the statutory prohibition.
If the Department does an NDR check on a driver's license applicant and finds that such applicant's privilege to drive is under suspension or revocation in another state, § 60-486 then requires the Department to then deny the application.
To be valid, an administrative rule or regulation must be properly promulgated, approved and filed. Haven Homes, Inc. v. Department of Public Welfare, 216 Neb. 731,346 N.W.2d 225 (1984). An agency's actions are to be reviewed by the provisions of the Administrative Procedures Act. Nebraska Health Care Ass'n v. Dunning, 575 F. Supp. 176
(1983).
An agency rule will be considered invalid if (1) it violates constitutional provisions, (2) exceeds the agency's statutory authority, or (3) was enacted without complying with the rule making procedures of the APA. Neb. Rev. Stat. § 84-911 (1992 Cum.Supp.).
The provisions of 23 CFR § 1237.5 describe the requirements for state participation in the PDPS. Under 23 CFR § 1237.5, participating states must do PDPS checks on all "first-time, non-minimum age driver license applicants", and may do PDPS checks for "other driver licensing and driver improvement purposes". 23 CFR § 1237.5.
Requiring all renewal, reissue, replacement or duplicate license applicants to pass a PDPS check does not appear to violate the provisions of 23 CFR § 1237.5. Such an administrative rule does not appear to exceed the Department's license-granting authority in Neb. Rev. Stat. § 60-486.
Operating a motor vehicle is not a fundamental right, and motor vehicle operators are not members of a constitutionally "suspect class". See San Antonio v. Rodriguez,411 U.S. 980 (1973) (discussing suspect classification). To do a PDPS check of all noncommercial and commercial driver license applicants does not violate the applicant's privacy.
The mandate of § 60-486 to the Department of Motor Vehicles seems clear: no one may receive or possess a driver's license in the State of Nebraska if they have a license that is suspended or revoked — for whatever reason in another state. In order to accomplish the statute's intended purpose, the Department may, therefore, first confirm whether the applicant has a driver's license that is suspended or revoked in another state. It seems reasonable, therefore, for the Department to routinely do NDR checks on all driver's license applicants in the State.
Further support for the foregoing interpretation is found in consideration of the legislative history underlying Neb. Rev. Stat. § 60-486, 60-4,153 (1992 Cum.Supp.).
Section 60-4,153 was enacted as part of LB 285, 1989 Neb. Laws, because Congress had passed the Commercial Motor Vehicle Safety Act of 1986. See Introducer's Statement of Intent for LB 285, Ninety-First Legislature, First Session, Senator Howard Lamb, Transportation Committee Chairman, Feb. 13, 1989.
Neb. Rev. Stat. § 60-486 (1992 Cum.Supp.) was also affected by LB 285. Mike Hybel, Transportation Committee Legal Counsel, introduced LB 285 as follows:
 The second change made by LB 285 is that current law provides that no person shall be licensed to operate a motor vehicle if the person has an operator's license currently suspended or revoked in another state for sic a alcohol-related violation. The change made by the bill provides that no person shall be licensed if they currently have a license suspended or revoked for any reason in another state.
Hearings of the Transportation Committee, Ninety-First Legislature, First Session, Feb. 13, 1989 at 31-32 (emphasis added).
The Driver License Compact, Neb. Rev. Stat., vol. 2A, appendix (T) expresses a similarly broad policy with respect to public safety and the issuance of a license to drive. Article IV of the Compact provides that,
 Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:
 (1) The applicant has held such a license, but the same has been suspended by reason, in whole or in part, of a violation and if such suspension period has not terminated.
 (2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of one year from the date the license was revoked, such person may make application for a new license if permitted by law. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways.
 (3) The applicant is the holder of a license to drive issued by another party state and currently in force unless the applicant surrenders such license.
Driver License Compact, Neb. Rev. Stat., vol. 2A, appendix (T), article IV.
DISCUSSION
The potential expansion of PDPS checks to include applicants for driving permits and medical hardships permits would also appear to be permitted under the authority of § 60-486 (1992 Cum.Supp.). It is also an arguably permitted use of the PDPS "for other driver licensing and driver improvement purposes".
Again, the Department may promulgate rules and regulations within the scope of the statutory authority thus granted.
However, the fact that a contemplated rule or regulation is permitted, however, does not mean that such rule or regulation is required. The Department must make such determinations based on sound and reasonable policy considerations.
Sincerely yours, DON STENBERG Attorney General Paul N. Potadle Assistant Attorney General Approved By: _____________________________ Attorney General 46-1455