DILLARD DEPARTMENT STORES, INC., APPELLEE, V. YVETTE
POLINSKY, APPELLEE, AND DAN DOLAN, COMMISSIONER OF
LABOR OF THE STATE OF NEBRASKA, APPELLANT.

530 N.W.2d 637

Filed April 21, 1995.   No. S-93-515.

John F. Sheaff and John H. Albin for appellant.

David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellee Dillard Dept. Stores.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and CONNOLLY, JJ., and MILLER-LERMAN, Judge.

MILLER-LERMAN, Judge.

## INTRODUCTION

This case involves the issue of whether an employee is entitled to unemployment compensation benefits under the Employment Security Law, Neb. Rev. Stat. § 48–601 et seq. (Reissue 1988 & Cum. Supp. 1992), where the employee gave notice to the employer and was terminated during the notice period. The Commissioner of Labor (Commissioner) appeals the order of the Douglas County District Court of May 11, 1993, which reversed the decision of the appeal tribunal of the Nebraska Department of Labor and found that Yvette Polinsky, a former employee of Dillard Department Stores, Inc. (Dillard), was not entitled to unemployment compensation benefits, except for certain dates within the notice period, namely October 10 to 14, 1992.

## RECORD

The testimony to which reference is made was given before the Nebraska Appeal Tribunal on November 25, 1992. This testimony became the bill of exceptions before the district court and was received in evidence by the district court at the hearing on the petition for review on April 2, 1993.

## FACTS

The essential facts are undisputed. Dillard, appellee, employed Polinsky as an auditor in the customer service department from October 9, 1991, until October 2, 1992. On September 30, 1992, Polinsky gave Dillard a written 3–week notice of resignation. The parties agree that Polinsky shortened her notice period to 2 weeks, apparently because tension developed between Polinsky and her supervisor after Polinsky had tendered her notice of resignation. In the absence of discharge, Polinsky's notice period would have expired on

October 14, 1992. Polinsky testified that she was willing and available to work through the full 2-week notice period.

The record shows that upon being advised of her resignation, Dillard began seeking a replacement for Polinsky. Dillard informed Polinsky on October 2 that her employment would end at the end of her shift that day. On October 13, Polinsky received her final compensation, which consisted of accrued vacation benefits of $230. Dillard did not pay Polinsky wages for the notice period.

Cat McGrath-Farmer, the operations manager for Dillard's customer service department, testified that Dillard terminated Polinsky prior to the expiration of Polinsky's notice period because Dillard was seeking a replacement worker and that the budget allowed for only one employee per position at a time. The record shows that Kathy Grigaitis was hired as Polinsky's replacement. Grigaitis first applied for an auditor's position with Dillard on August 10, 1992, and was still available for employment on October 2, when she was called in to interview for Polinsky's position. Grigaitis began work on October 5.

## PROCEDURAL HISTORY

Polinsky applied for unemployment compensation benefits. Polinsky informed the unemployment office that she had given notice to Dillard, but had been released prior to the expiration of her notice period. On October 30, 1992, a deputy at the unemployment office determined:

> You were separated from your job with the above employer on 09-30-92 after submitting your resignation notice. Your employer did not allow you to continue work until the effective date of your resignation. Your actual separation was due to a discharge for reasons other than misconduct, and not a voluntary quit.

> No disqualification is assessed on this separation. Benefits are allowed if otherwise payable.

The deputy concluded that Polinsky was disqualified from receiving unemployment compensation benefits from October 4 through 10, 1992, because the accrued vacation benefits that Dillard paid to Polinsky exceeded the weekly benefit amount. The deputy also found that no other disqualification from

benefits was required.

Dillard appealed the deputy's findings to the Nebraska Appeal Tribunal. The administrative law judge held a hearing on November 25, 1992. At the hearing, McGrath–Farmer testified for Dillard and Polinsky testified on her own behalf. On December 2, 1992, the administrative law judge affirmed the claims deputy's determinations. The administrative law judge found that Dillard "severed the employment relationship on October 2, 1992," and that the "separation [was] at the discretion of the employer, and therefore a discharge." The administrative law judge found that there was "no evidence of misconduct" and that the separation "was non–disqualifying." The administrative law judge concluded that Polinsky "was discharged under non–disqualifying conditions and is entitled to benefits for weeks claimed, if otherwise eligible."

On January 8, 1993, Dillard filed in the district court for Douglas County a petition for review of the decision of the Nebraska Appeal Tribunal. A hearing was held on April 2, 1993. On May 11, the district court issued an order reversing the decision of the Nebraska Appeal Tribunal and disqualifying Polinsky from unemployment compensation benefits for not less than 7 nor more than 10 weeks after her intended resignation date of October 14, 1992. The district court order provided that Polinsky was entitled to receive unemployment compensation benefits "only for the period between October 10 and 14, 1992."

In its order, the trial court found that "in this case, Polinsky's separation was brought about entirely by her own volition, i.e., her notice of resignation." The district court reasoned that to permit unemployment compensation benefits would unjustly enrich the employee. The district court also stated that the decision of the Nebraska Appeal Tribunal

> places an employer at a disadvantage, since it must either wait to fill the prospectively vacant position, and thus risk losing a potential new employee, or it may fill the position before the end of the notice period, and suddenly become liable for unemployment compensation benefits for which it would otherwise have no liability.

In so finding, the district court relied on decisions from other

states. Polinsky and the Commissioner appeal the May 11, 1993, order of the district court.

## ASSIGNMENTS OF ERROR

In the Commissioner's brief on appeal the assignments of error are stated generally as follows: (1) The district court erred by finding that Polinsky voluntarily left her employment; (2) the district court erred by requiring an employee who is discharged prior to the date of her intended resignation to establish good cause for leaving; and (3) the district court erred by failing to liberally construe the Employment Security Law for the beneficent purpose of paying benefits. Polinsky has not separately assigned errors.

## STANDARD OF REVIEW

In an appeal from the Nebraska Appeal Tribunal to the district court regarding unemployment benefits, the district court conducts the review de novo on the record, but on review by the Court of Appeals or the Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record. § 48–638, Neb. Rev. Stat. §§ 84–917 and 84–918 (Reissue 1994). When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Lee v. Nebraska State Racing Comm.,* 245 Neb. 564, 513 N.W.2d 874 (1994). However, when reviewing a question of law, an appellate court reaches a conclusion independent of the district court's ruling. *Hausse v. Kimmey, ante* p. 23, 524 N.W.2d 567 (1994).

A rebuttable presumption of validity attaches to the actions of administrative agencies. The burden of proof rests with the party challenging the agency's action. *In re Application of United Tel. Co.,* 230 Neb. 747, 433 N.W.2d 502 (1988); *Haven Home, Inc. v. Department of Pub. Welfare,* 216 Neb. 731, 346 N.W.2d 225 (1984).

## ANALYSIS

The Commissioner argues on appeal that the district court erred by characterizing Polinsky's termination from work as

voluntary, thus disqualifying Polinsky from benefits except for the period October 10 to 14, 1992. The Commissioner also argues that the district court erred by ordering intermittent benefits because there is no statutory provision which permits the same set of facts to be treated as both a discharge and a voluntary separation. In response, Dillard argues that Polinsky's unemployment is the result of her voluntary resignation, that the district court's order was proper, and that *Speedway Motors v. Commissioner of Labor*, 1 Neb. App. 606, 510 N.W.2d 341 (1993), was incorrectly decided.

This case is decided by reference to the Employment Security Law, § 48–601 et seq. The standard for disqualification from benefits applicable to this case is established by § 48–628(a)(1), which states that an individual shall be disqualified for benefits

> [f]or the week in which he or she has left work voluntarily without good cause, if so found by the Commissioner of Labor, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case . . . .

The remaining subsections of § 48–628, (b) through (k), outline other behaviors or scenarios which disqualify an employee from receiving benefits and are not applicable here. It is undisputed that Polinsky was not discharged for misconduct connected with her work or for any other disqualifying event.

Under the undisputed facts of this case, Dillard had the option of accepting Polinsky's 2–week notice and allowing her to work for 2 weeks. At the end of that time, Polinsky could have filed for unemployment compensation benefits, but under § 48–628(a)(1), she would have had the burden of proving that she left her employment with good cause. See, *Stackley v. State*, 222 Neb. 767, 386 N.W.2d 884 (1986); *Taylor v. Collateral Control Corp.*, 218 Neb. 432, 355 N.W.2d 788 (1984); *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979). However, because Dillard elected to terminate Polinsky's employment prior to the date given in her notice, Polinsky did not pursue this course, and we are instead presented with a case in which an employee was terminated during the notice period.

Dillard argues that awarding benefits to an individual who

was terminated but had intended to leave work unjustly enriches the employee. Dillard argues that such result is "incorrect from a legal standpoint, and [is] also bad policy." Brief for appellee Dillard at 4. As to the legal argument, Dillard disagrees with the decision of the Court of Appeals in *Speedway Motors, supra*, and relies on case law from other jurisdictions. The legal issue raised by this appeal has not been the subject of an opinion of this court. In connection with the policy argument, Dillard argues that it is inequitable to require an employer to continue employing an individual who has given notice, "no matter how lengthy that notice may be, and despite the fact that the employer has been able to find a replacement employee before the notice period has expired." Brief for appellee Dillard at 4–5.

In 1972, the Nebraska Appeal Tribunal in In re Wiese, vol. 72 No. 213, concluded under facts similar to those presented here that, in effect, the termination of an employee during the notice period was for the sake and convenience of the employer and that the employee was entitled to unemployment compensation benefits without disqualification. Pursuant to the Commissioner's authority to make rules and regulations, § 48–607, the decisions of the Nebraska Appeal Tribunal are to be accorded precedential value in subsequent tribunal proceedings. The Nebraska Appeal Tribunal's December 2, 1992, decision in this case was consistent with its previous decisions. In the instant case, Dillard has the burden of overcoming the rebuttable presumption of the validity of the administrative agency's action. See, *In re Application of United Tel. Co.*, 230 Neb. 747, 433 N.W.2d 502 (1988); *Haven Home, Inc. v. Department of Pub. Welfare*, 216 Neb. 731, 346 N.W.2d 225 (1984).

A review of other states' decisions displays a split among jurisdictions. As urged by the Commissioner, some states award benefits to employees who are terminated during the notice period. See *Eide v. Project for Pride in Living*, 493 N.W.2d 596 (Minn. App. 1992) (holding that employee who was discharged when she submitted notice of resignation was entitled to full unemployment compensation benefits). Accord, *Hendricks & Lamers, Ltd. v. Vadnais*, 389 N.W.2d 262 (Minn. App. 1986);

*Ackerberg v Grant Comm Hosp*, 138 Mich. App. 295, 360 N.W.2d 599 (1984); *West Jordan v. Morrison*, 656 P.2d 445 (Utah 1982); *Cotright v. Doyal*, 195 So. 2d 176 (La. App. 1967); *Mauro v. Administrator*, 19 Conn. Supp. 362, 113 A.2d 866 (1954). As noted by Dillard, other states deny benefits to an employee who is terminated during the notice period, except for the portion of the notice period between the date of discharge and the intended date of resignation (intermittent awards). See *Stephen's Nu-Ad, Inc. v Green*, 168 Mich.. App. 219, 423 N.W.2d 625 (1988) (holding that employee who was fired after giving 2-week notice was entitled to unemployment benefits for period between time he gave notice and time he intended to quit). Accord, *Ennis v. Employment Division*, 37 Or. App. 281, 587 P.2d 102 (1978); *Amado Unempl. Compensation Case*, 177 Pa. Super. 506, 110 A.2d 807 (1955). The court is also aware of the line of cases, including some from Nebraska, where an employer advises the employee of an impending layoff and the employee quits before the layoff date, in which the employee is awarded benefits as of the employer's announced layoff date. See, *Perkins v. Equal Opportunity Comm.*, 234 Neb. 359, 451 N.W.2d 91 (1990) (holding that employee who quit before his extended period of probationary employment ended after being informed he would be fired at the end of this period did not leave his employment voluntarily and was entitled to unemployment benefits); *School Dist. No. 20 v. Commissioner of Labor*, 208 Neb. 663, 305 N.W.2d 367 (1981) (holding that superintendent who resigned after being told that in an upcoming meeting the board of education would not reelect him was entitled to unemployment benefits as he did not voluntarily leave his employment). Accord, *Barren River Mental Health v. Bailey*, 783 S.W.2d 886 (Ky. App. 1990); *Fiskewold v. H.M. Smyth Co., Inc.*, 440 N.W.2d 164 (Minn. App. 1989); *S.D. Stockgrowers Ass'n v. Holloway*, 438 N.W.2d 561 (S.D. 1989); *In re Poteat v. Employment Security Comm.*, 319 N.C. 201, 353 S.E.2d 219 (1987); *McCammon v. Yellowstone Co., Inc.*, 100 Idaho 926, 607 P.2d 434 (1980); *Johnston v. Florida Dept. of Commerce*, 340 So. 2d 1229 (Fla. App. 1976).

Under Nebraska law each job and the facts of its termination must be considered separately with regard to disqualification for

benefits. *Gilbert v. Hanlon*, 214 Neb. 676, 335 N.W.2d 548 (1983). This court recognizes that ordinarily the Employment Security Law does not grant benefits to employees who leave their work purely voluntarily. *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979). The Employment Security Law is to be liberally construed to accomplish its beneficent purposes. *IBP, inc. v. Aanenson*, 234 Neb. 603, 452 N.W.2d 59 (1990); *Hanlon v. Boden*, 209 Neb. 169, 306 N.W.2d 858 (1981). "The rule of construction that the Employment Security Law is to be liberally construed in order that its beneficent purposes may be accomplished applies to the interpretation of the law but not to consideration of the evidence offered in support of a claim under the law." *McClemens v. United Parcel Serv.*, 218 Neb. 689, 691, 358 N.W.2d 748, 750 (1984).

The Commissioner urges this court to reverse the ruling of the district court because the facts demonstrate that Polinsky did not voluntarily leave work as "voluntarily" is used in the controlling statute. The Commissioner refers us specifically to the statutory language of § 48-628(a)(1) which links the timing of disqualification from benefits to the period immediately following "the week in which [the employee] left work voluntarily without good cause." The Commissioner notes and the record shows that Polinsky left work on October 2, 1992, and did not return. Due to the termination of Polinsky's employment by Dillard on October 2, there never ensued a week in which she left work voluntarily, such as to require disqualification from benefits under § 48-628(a)(1).

In interpreting statutory language under a similar provision of the Utah Code Ann. § 35-4-5(a) (Supp. 1981), the Supreme Court of Utah stated in *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982), "By its wording, the statute directs our attention to the week in which the claimant [employee] left work—not the week that he might have left work, or offered to leave work, but the week in which the claimant actually *left* work." The Utah court continued, "[T]he language of the statute is unambiguous: the week in which the claimant actually leaves work is the determinative factor regarding subsequent eligibility." *Id*. at 447. Thus, in *West Jordan*, the employee was found eligible for benefits. In so holding, the Utah court

rejected the employer's argument which "would have us consider the week in which the claimant offered to resign without regard for the week in which he actually left work." *Id.* at 446. We agree with the analysis applied by the Utah court.

"In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning." *State v. Flye,* 245 Neb. 495, 506, 513 N.W.2d 526, 533 (1994). Accord, *In re Application of Jantzen,* 245 Neb. 81, 511 N.W.2d 504 (1994); *State v. Stratton,* 220 Neb. 854, 374 N.W.2d 31 (1985). It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *Sorensen v. Meyer,* 220 Neb. 457, 370 N.W.2d 173 (1985).

According to the plain meaning of § 48–628(a)(1), Polinsky would be disqualified in the weeks immediately following the week in which she actually left voluntarily, were there such a week. We decline to adopt or create a doctrine of constructive voluntary leave and find no statutory basis to do so. See *Ackerberg v Grant Comm Hosp,* 138 Mich. App. 295, 423 N.W.2d 625 (1984). Under the plain language of the controlling Nebraska statute and the facts of this case, Polinsky is not disqualified from benefits. This result is consistent with the rationale in *Speedway Motors v. Commissioner of Labor,* 1 Neb. App. 606, 510 N.W.2d 341 (1993).

Dillard argues that it is unfair to an employer to restrict its ability to fire an employee during a lengthy notice period or, if the employer discharges the employee, to run the risk of an award of benefits, thereby injuring the employer's experience rating. The argument continues that "lame duck" employees, especially those with lengthy notice periods, tend to have a negative impact on the morale of the workplace. The employer has not explored the hypothetical in which an employee gives notice and the employer terminates the employee but pays the employee wages for the remainder of the notice period. In other jurisdictions, such fact patterns have resulted in disqualification for benefits. See, *Safeco Ins. Co. v. Meyering,* 102 Wash. 2d 385, 687 P.2d 195 (1984); *Piggly Wiggly Op. W., Inc. v. State,*

*Dept. of Emp. Sec.*, 292 So. 2d 257 (La. App. 1974).

In view of the facts of this case, the controlling statute, and precedent, Dillard's policy arguments are not persuasive. In this regard, we note that under Minnesota law, an individual who voluntarily resigns is ordinarily disqualified from benefits. Minn. Stat. Ann. § 268.09, subd. 1(a) (West 1992). However, the Minnesota Legislature has provided an exception to disqualification in § 268.09, subd. 1(c)(5), which provides that an employee is not disqualified from receiving benefits where "the individual is terminated by the employer because the individual gave notice of intention to terminate employment within 30 days." Thus, Minnesota has employed a legislative remedy in connection with concerns similar to those raised by Dillard in this case.

The judgment of the district court is reversed, and the cause is remanded with directions to affirm the decision of the Nebraska Appeals Tribunal.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.

FAHRNBRUCH, J., concurs in the result.